UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-12481WGY

| | |
|---|---|
| INDIANAPOLIS LIFE INSURANCE COMPANY | ) ) |
| Plaintiff | ) |
| vs. | ) ) |
| ROSALIND HERMAN, TRUSTEE, FINANCIAL RESOURCES NETWORK, INC., PROFIT SHARING PLAN AND TRUST, FINANCIAL RESOURCES NETWORK, INC., PROFIT SHARING PLAN AND TRUST GREGG D. CAPLITZ, RUDY K. MEIESELMAN, M.D. AND HOPE E. MEISELMAN | ) ) ) ) ) ) ) |
| Defendants | ) ) |
| _____ | ) |
| RUDY K. MEISELMAN, M.D. | ) ) |
| Cross-Claim Plaintiff | ) ) |
| vs. | ) ) |
| ROSALIND HERMAN, TRUSTEE, FINANCIAL RESOURCES NETWORK, INC., PROFIT SHARING PLAN AND TRUST, FINANCIAL RESOURCES NETWORK, INC., PROFIT SHARING PLAN AND TRUST GREGG D. CAPLITZ | ) ) ) ) ) ) |
| Cross-Claim Defendants | ) |

**ANSWER OF RUDY K. MEISELMAN, M.D. AND
HOPE E. MEISELMAN, AND CROSS-CLAIM OF RUDY K. MEISELMAN, M.D**

**<u>Answer</u>**

All answers set forth below are submitted jointly on behalf of defendant

Rudy K. Meiselman, M.D. and his wife defendant Hope E. Meiselman:

1. Admitted.
2. Admitted.
3. Admitted.
4. Admitted.
5. Admitted.
6. Admitted.
7. Admitted.
8. Admitted.
9. Admitted.
10. Admitted.
11. Admitted.
12. Admitted.
13. Admitted.
14. Admitted.
15. Admitted.
16. Admitted.
17. Admitted.
18. Admitted.
19. Admitted.
20. Admitted.
21. Admitted.
22. Admitted.
23. Admitted.

24. Admitted.

25. Admitted.

26. Admitted.

27. Admitted.

28. Admitted.

29. Admitted.

30. Admitted.

31. Admitted.

32. Admitted.

33. Admitted.

34. Admitted.

35. Admitted.

36. Defendants deny that Dr.Meiselman's *entire* contribution and benefits in the FRN Plan have been disbursed to him, in that various amounts having nothing to do with ILIC's refunded premium plus interest have been withheld from him by defendants (see Crossclaim for further details).

37. Admitted.

## COUNT I

38. Defendants repeat their answers to paragraphs 1-37 of the Complaint as if fully set forth herein.

39. Admitted.

40. Admitted.

41. Admitted.

42. Admitted.

WHEREFORE, the Meiselman defendants admit that the Policies should be rescinded.

## COUNT II

43. Defendants repeat their answers to paragraphs 1-42 of the Complaint as if fully set forth herein.

44. Defendant's lack sufficient information to admit or deny what if anything the FRN Plan or ILIC believed.

45. Admitted.

WHEREFORE, the Meiselman defendants admit that the Policies should be rescinded.

## COUNT III

46. Defendants repeat their answers to paragraphs 1-45 of the Complaint as if fully set forth herein.

47. Admitted.

48. Admitted.

49. Admitted.

50. Admitted.

51. Admitted.

52. Admitted.

53. Admitted.

54. Admitted.

55. Admitted.

56. Admitted.

57. Admitted.

WHEREFORE, judgment should enter for the Meiselman defendants on plaintiff's claim for damages.

## COUNT IV

58. Defendants repeat their answers to paragraphs 1-57 of the Complaint as if fully set forth herein.

59. Admitted.

60. Admitted.

61. Admitted.

62. Admitted.

WHEREFORE, judgment should enter for the Meiselman defendants on plaintiff's claim for damages.

## COUNT V

63.  Defendants repeat their answers to paragraphs 1-62 of the Complaint as if fully set forth herein.

64. Admitted.

65. Admitted.

66. Admitted.

Further answering, the Meiselman defendants state:

## FIRST AFFIRMATIVE DEFENSE

Any monetary damages suffered by plaintiff were caused by persons or entities other than the Meiselman defendants.

WHEREFORE, judgment should enter for the Meiselman defendants on plaintiff's claim for damages.

**<u>Cross-Claim</u>**

<u>Introduction</u>

This Cross-Claim arises out the same property that is the subject of the original action, namely, the beneficial interest of Cross-Claim plaintiff Rudy K. Meiselman in the Financial Resources Network, Inc. Profit Sharing Plan ("FRN Plan"). It is based upon the FRN Plan Trustee's conversion of funds totaling approximately $70,000.00 which should have been rolled over to Meiselman's Individual Retirement Account.

1. Plaintiff in Cross-Claim Rudy K. Meiselman (Meiselman) is a natural person residing in Florida.

2. Defendant in Cross-Claim Financial Resources Network, Inc., (FRNI) d/b/a Insight Onsite Financial Solutions, is a Massachusetts for-profit corporation, with a business address of 424 Washington Street in Woburn, Massachusetts. FRNI is the Administrator under 26 U.S.C. §401(k) of a Profit Sharing Plan (PSP) for its employees, as promulgated pursuant to the Employee Retirement Income Security Act of 1997 (ERISA), as amended, 29 U.S.C. §1001, et seq.

3. Defendant in Cross-Claim Rosalind Herman, (Herman) is a natural person with a last known address of 27 Davis Street, Woburn, Massachusetts. Herman is President, Treasurer, Secretary and a Director of FRNI, as well as, upon information and belief, sole shareholder. Herman is also Trustee of the

FRNI PSP. Herman in her business capacity acts as the PSP Administrator and sole trustee of the 401(k) profit sharing plan on behalf of FRNI.

4. Defendant Gregg D. Caplitz (Caplitz) is upon information and belief, an undisclosed principal of FRNI, who exercises control over all of its operations, including but not limited to the administration of the PSP. PSP named Caplitz its "Control Person" in the form ADV application it submitted to the Securities and Exchange Commission for registered investment advisor status.

### Jurisdiction

5. Jurisdiction and venue are conferred by 29 United States Code §1132(a) and (e), which state in pertinent part:

§ 1132.  Civil enforcement
(a) Persons empowered to bring a civil action. A civil action may be brought--
  (1) by a participant or beneficiary--
    (A) for the relief provided for in subsection (c) of this section, or
    (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan……
   (3) by a participant… to enjoin any act or practice which violates any provision of this title or the terms of the plan…or to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan…

(e) Jurisdiction.
  (1) Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this title brought by the Secretary or by a participant.... State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under paragraphs (1)(B) and (7) of subsection (a) of this section.
  (2) Where an action under this title is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

**Factual Background**

6. Meiselman became employed as a technical analyst by FRNI in 2002. FRNI agreed to pay Meiselman a salary of $48,000.00 per year. In conjunction with his employment, Meiselman elected to participate in FRNI's qualified 401(K) pension plan (the PSP). By election and under the direction of the trustee, all of the bulk of Meiselman's FRNI salary was deferred to the PSP, up to the limit allowed by law. In conjunction with Meiselman's participation in the PSP, FRNI furnished him with a document dated March 27, 2002 entitled "A Summary Description of Financial Resources Network, Inc. 401(k) Profit Sharing Plan". Prior to becoming employed by FRNI, Meiselman had amassed retirement funds of $11,242,853.20, and upon joining the PSP he executed a tax-free rollover of his pre-existing retirement funds into the new FRNI PSP.   In addition, over the next several years, a relatively small sum, consisting of the bulk of Meiselman's FRNI salary was deferred into the PSP account, at Meiselman's election.

7. For good and valuable consideration FRNI and Herman contractually bound themselves to comply with the provisions of the PSP on Meiselman's behalf, and owed him a fiduciary duty under law to act in his best interests.

8. Although Herman and FRNI were required by the PSP Plan Summary to maintain the aforesaid funds in a separate Rollover Account, they did not do so. Instead, segregated self-directed accounts with separate account numbers were set up to hold the aforesaid funds.

9. Pursuant to the PSP Plan Summary, Meiselman was and is 100% vested in the funds rolled over to the PSP (even though Herman and FRNI had failed to set up Rollover Account) and was therefore and is entitled at any time to withdraw the funds placed therein.

10. In addition, regardless of the rollover (rather than elective contributory) status of Meiselman's PSP assets, his age of 78 allowed him under the PSP Plan Summary to withdraw all of his funds from the PSP at any time.

11. On or about June 30, 2004, Meiselman sent by certified mail the first of several certified mail letters to Herman in which, inter alia, he directed Herman, in her capacity as trustee and administrator, to **"immediately respond to the request and wire out all assets in my accounts as a distribution from my PSP accounts to my rollover Profunds IRA account"**. In that letter, Meiselman provided Herman with detailed, accurate wiring instructions.

12. When after almost four full months had elapsed with no substantive response at all from Herman, FRNI or anyone on their behalf to Meiselman's June 30, 2004 directive, and after Herman refused to accept any mail, including certified mail from him, Meiselman brought an action in this court against all of the current Cross-Claim defendants. Rudy K. Meiselman v. Financial Resources Network, Inc., et al., Civil Action No. 04-12304WGY ("Meiselman I")

### Post-Filing History of Meiselman I

13. The thrust of Meiselman I was to force the defendants to comply with ERISA law and the PSP Plan Summary by rolling over the entire amount in Meiselman's PSP into another qualified plan, namely an IRA at Profunds IRA not related to FRNI. The

9

Meiselman I defendants reacted to the lawsuit by causing the custodian (T.D. Waterhouse) of Meiselman's PSP accounts to liquidate all of the accounts' equity positions into cash, and by blocking Meiselman's internet access to his accounts, all done without Meiselman's prior knowledge or consent. Up until that point, by agreement with FRNI, Herman and Caplitz, Meiselman had enjoyed the authority to "self-direct" all of the investment decisions with regard to his segregated PSP accounts, and had been given unfettered internet access to his PSP account balances, statements and transaction reports.

14. Moreover, none of the Meiselman I defendants filed an answer to the complaint. Instead, they hired counsel who negotiated with Meiselman's counsel toward a resolution of Meiselman's claim, which resolution in essence called for the defendants to do perform as required by law, namely, execute the requested rollover of all Meiselman's PSP funds. It was also agreed that certain ERISA formalities were to be observed, including an outside audit of the PSP accounts by Karl Boyer ("Boyer") to determine Meiselman's appropriate share, with transfer of the amount so determined to the outside IRA that had been designated by Meiselman.

15. Shortly after negotiations had commenced, and after agreement in principle had been reached, Meiselman learned that FRNI and Herman had caused approximately $49,849.69 to be removed from his PSP accounts, and had paid over those funds as an advance retainer to counsel they had hired to respond to the Meiselman I complaint. This was never authorized nor was it approved by Meiselman or counsel for Meiselman. There is nothing in the PSP Plan Summary which permits Herman and FRNI to violate their fiduciary obligations to Meiselman, and then retain with Meiselman's money counsel to defend themselves for such violation. There has never been an accounting of the funds

converted from Meiselman's PSP accounts to pay counsel fees for the <u>Meiselman I</u> defendants.

16. Also, as a result of the Boyer audit, it was determined that FRNI had made excess matching contributions totaling $15,000.00, from Meiselman's FRNI salary into Meiselman's PSP accounts. That is, $15,000.00 in salary that should have been paid to Meiselman directly was instead contributed to the PSP in which the only other participant is the trustee, Herman. FRNI and Herman followed Boyer's recommendation not to rollover the $15,000.00 payment, but they have ignored his recommendation to pay that amount over to Meiselman as ordinary income. FRNI continues to withhold from Meiselman this portion of the salary he is due.

17. FRNI also owes Meiselman additional salary for 2004, in the gross amount of $8,000.00. This amount should have been paid into his pension plan account tax free in accordance with the salary deferral agreement on file with the trustee.

18. Also, after FRNI and Herman directed Waterhouse to liquidate Meiselman's PSP investments, Waterhouse held the liquidated funds in its money market accounts, wherein the funds earned a dividend of approximately $6,000.00. The Cross-Claim defendants have never accounted to Meiselman for this dividend, have removed it from his pension plan account, and have diverted it to their own use.

19. As an improper pre-condition to performing their fiduciary and legal obligations (rollover of the PSP funds as requested by Meiselman), the <u>Meiselman I</u> defendants demanded a release, which Meiselman executed. Meiselman's counsel also executed a Rule 41(a) notice of dismissal, to be held with Meiselman's release in escrow by counsel for the <u>Meiselman I</u> defendants, and not filed with the Court until satisfaction

11

of the primary consideration, i.e, transfer of not just some but all of Meiselman's PSP funds to the new IRA.

19. On November 30, 2004 FRNI rolled over some but not all of Meiselman's PSP funds to the new IRA. The amount of $49,849.69 that Herman and FRNI diverted to their counsel as an advance retainer was not rolled over, and an additional sum of approximately $24,000.00 was withheld from the rollover and converted to their own use by Cross-Claim defendants. Upon information and belief, the $24,000.00 figure includes the $15,000.00 figure described in paragraph 16 above, and the $6,000.00 figure described in Paragraph 18 above, albeit that precise calculation of these figures and what they are comprised of is made difficult by the failure of the Cross-Claim defendants to render any accounting, Herman deducted $2,778.24 from the rollover as a "management fee" for the month of November 2004.  However, Herman did not ever manage Meiselman's invesments.  Meiselman had agreed to be charged a small fee for access to the T.D. Waterhouse trading platform, yet for the month of November 2004 Herman terminated such access, thus was not entitled to any "management fee".

## Exhaustion of Administrative Remedies

20. Plaintiff denies that exhaustion of administrative remedies doctrine applies to these claims, but further states that his attempt to comply with the administrative remedies set forth in the PSP Plan Summary have been utterly ignored by defendants. See above.

## Count I: Declaratory Judgment

21. Plaintiff hereby reasserts herein all allegations of Paragraphs 1-20 above as if fully set forth again.

12

22. <u>29 U.S.C. §1110(a)</u> provides in pertinent part that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part [29 USCS §§ 1101 et seq.] shall be void as against public policy." Therefore, the release executed by Meiselman in favor of Herman and FRNI is void.

23. There has been a failure of consideration for the release in that FRNI and Herman have failed and refused to rollover all of Meiselman's PSP funds, as more fully set forth above.

24. The Rule 41(a)(1) stipulation of dismissal with prejudice executed by counsel for Meiselman was filed by counsel for the <u>Meiselman I</u> defendants without consent and in violation of the escrow agreement for the holding of same pending satisfaction of all of the promised consideration.

WHEREFORE, Meiselman seeks a declaration that this Cross-Claim is not barred by the release or the notice of dismissal with prejudice filed in <u>Meiselman I</u>, and may thus proceed to trial.

**Count II: Breach of Employment Contract Against FRNI and Herman**

25. Meiselman hereby reasserts herein all allegations of Paragraphs 1-24 above as if fully set forth again.

26. The failure of Herman and FRNI to pay over to plaintiff certain portions of his salary earned for services provided, namely, $15,000.00 in excess matching PSP contributions and $8,000.00 in salary for 2004, constitute a breach of the at-will contract of employment between the parties.

WHEREFORE, Meiselman seeks damages in the liquidated amount of $23,000.00, plus interest, costs and such further relief as this Court deems just and proper.

### Count III: Breach Of Fiduciary Duty-Herman, FRNI and Caplitz

27. Plaintiff hereby reasserts herein all allegations of Paragraphs 1-26 above as if fully set forth again.

28. At all times relevant hereto, Cross-Claim defendants owed Meiselman a fiduciary duty pursuant to the PSP and 29 United States Code § 1104, which states in pertinent part:

> (a) Prudent man standard of care.
>   (1) Subject to sections 403(c) and (d), 4042, and 4044 [29 USCS §§ 1103(c), (d), 1342, 1344], a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and--
>     (A) for the exclusive purpose of:
>       (I) providing benefits to participants and their beneficiaries; and
>       (ii) defraying reasonable expenses of administering the plan;
>     (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims…

29. Upon information and belief, at all times relevant hereto, Herman had designated Caplitz as a de facto co-fiduciary of the PSP, without complying with various prerequisites of the Plan Agreement and of law. For example, 29 United States Code § 1112(b) states in pertinent part: "It shall be unlawful for any plan official to whom subsection (a) applies, to receive, handle, disburse, or otherwise exercise custody or control of any of the funds or other property of any employee benefit plan, without being bonded as required by subsection (a) and it shall be unlawful for any plan official of such plan, or any other person

having authority to direct the performance of such functions, to permit such functions, or any of them, to be performed by any plan official, with respect to whom the requirements of subsection (a) have not been met. Upon information and belief, Caplitz was never bonded for his service as de facto co-fiduciary of the PSP, nor did Herman comply with the Plan requirements for naming him its investment manager. For all intents and purposes, Caplitz held himself out as a fiduciary of the PSP, and exercised dominion and control of the PSP in such a manner as to be equally liable with Herman for violation of fiduciary duty.

29. Cross-Claim defendants violated their fiduciary duty to Meiselman by a) by failing to comply with Meiselman's simple directives to rollover his PSP funds, and by forcing him instead to file the <u>Meiselman I</u> action to compel them to comply with their fiduciary duties; b) by converting the funds as summarized in Paragraph 19 above, including but not limited to helping themselves to Meiselman's money to defend a legal action they instigated by their refusal to carry out their fiduciary obligations; c) by liquidating his PSP account positions to cash for no valid reason; and d) by such further manner and means as shall be proven at trial.

30. As the direct proximate cause of the breach of fiduciary duty by the Cross-Claim defendants as set forth above, Meiselman has suffered damages consisting of the loss of approximately $72,000.00 in PSP assets converted by Cross-Claim defendants to their own use as more fully set forth above, and he has further suffered the loss of hundreds of thousands of dollars in capital appreciation that would have been achieved

by the PSP investments wrongfully liquidated to cash by defendants, as more fully set forth above, and such further damage as shall be proven at trial.

31. Meiselman hereby asserts entitlement to attorney's fees and costs, pursuant to 29 United States Code § 1104(g), which states in pertinent part:

(1) In any action under this title (other than an action described in paragraph 2) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

WHEREFORE, Meiselman seeks damages in an amount to be proven at trial, plus interest, costs, attorneys' fees, and such further relief as this Court deems just and proper.

### Count IV: Breach Of Contract-Herman, FRNI and Caplitz

32. Plaintiff hereby reasserts herein all allegations of Paragraphs 1-31 above as if fully set forth again.

33. The Cross-Claim defendants had a contractual obligation to Meiselman to abide by the Plan Agreement.

34. The Cross-Claim defendants breached the covenants set forth in the Plan Agreement by a) by failing to comply with Meiselman's simple directives to rollover funds, and by forcing him instead to file the Meiselman I action to compel them to comply with their fiduciary duties; b) by converting the funds as summarized in Paragraph 19 above, including but not limited to helping themselves to Meiselman's money to defend a legal action they instigated by their refusal to carry out their fiduciary obligations; c) by liquidating his self-directed PSP account positions to cash for no valid reason; and d) by such further manner and means as shall be proven at trial.

16

35. As the direct proximate cause of the breach of contract by Cross-Claim defendants as set forth above, Meiselman has suffered damages consisting of the loss of approximately $72,000.00 in PSP assets converted by Cross-Claim defendants to their own use as more fully set forth above, and he has further suffered the loss of hundreds of thousands of dollars in capital appreciation that would have been achieved by the PSP investments wrongfully liquidated to cash by defendants, as more fully set forth above, and such further damages as shall be proven at trial.

WHEREFORE, Meiselman seeks damages in an amount to be proven at trial, plus interest, costs, attorneys' fees, and such further relief as this Court deems just and proper.

### Count V: Conversion-Herman, FRNI and Caplitz

37. Plaintiff hereby reasserts herein all allegations of Paragraphs 1-35 above as if fully set forth again.

38. Herman, FRNI and Caplitz wrongfully converted Meiselman's PSP rollover funds to their own use as more fully set forth above, all with the intent to permanently deprive Meiselman of said funds.

39. As the direct proximate cause of the conversion by Cross-Claim defendants as set forth above, Meiselman has suffered damages consisting of the loss of approximately $72,000.00 in PSP assets converted by Cross-Claim defendants to their own use as more fully set forth above, and such further damages as shall be proven at trial.

WHEREFORE, Meiselman seeks damages in an amount to be proven at trial, plus interest, costs, attorneys' fees, and such further relief as this Court deems just and proper.

Dated: February 10, 2004        RUDY K. MEISELMAN,
                                HOPE E. MEISELMAM
                                By their attorney,
                                LAW OFFICE OF CHARLES P. KAZARIAN, P.C.

                                /s/ Charles P. Kazarian
                                _____
                                Charles P. Kazarian, Esquire
                                77 North Washington Street
                                Boston, Massachusetts 02114
                                BBO#: 262660
                                (617) 723-6676