## DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-12481WGY

| | |
|---|---|
| INDIANAPOLIS LIFE INSURANCE COMPANY<br>        Plaintiff<br>vs.<br>ROSALIND HERMAN, TRUSTEE, FINANCIAL RESOURCES NETWORK, INC., PROFIT SHARING PLAN AND TRUST, FINANCIAL RESOURCES NETWORK, INC., PROFIT SHARING PLAN AND TRUST GREGG D. CAPLITZ, RUDY K. MEIESELMAN, M.D. AND HOPE E. MEISELMAN<br>        Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| RUDY K. MEISELMAN, M.D.<br>        Cross-Claim Plaintiff<br>vs.<br>ROSALIND HERMAN, TRUSTEE, FINANCIAL RESOURCES NETWORK, INC., PROFIT SHARING PLAN AND TRUST, FINANCIAL RESOURCES NETWORK, INC., PROFIT SHARING PLAN AND TRUST GREGG D. CAPLITZ<br>        Cross-Claim Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OF CROSS-CLAIM PLAINTIFF IN RESPONSE TO OPPOSITION OF CROSS-CLAIM DEFENDANTS TO MOTION FOR ENTRY OF SEPARATE AND FINAL JUDGMENT AND MOTION FOR RELIEF FROM JUDGMENT**

This Court, while not yet ruling on crossclaim plaintiff's Rule 54(b) motion, has denied crossclaim defendants' motion entitled <u>Opposition of Cross-Claim Defendants To Motion For Entry Of Separate And Final Judgment And Motion For Relief From</u>

1

Judgment. In its ruling the Court left open the possibility of reconsideration of that motion upon filing by crossclaim defendants of "detailed affidavits from witnesses setting forth the substance of the evidence in support of every defense proffered in the proposed answer"(title case in original). For the following reasons, this Court should affirm the denial of the motion for relief from judgment, regardless of the defenses that might be shown by crossclaim defendants, without more, at some future date.

## Standard of Review

Motions brought under Rule 60(b) are committed to the district court's sound discretion, and orders denying such motions are reviewed only for abuse of discretion. Torre v. Continental Ins. Co., 15 F.3d 12, 14 (1st Cir. 1994). Because Rule 60(b) is a vehicle for "extraordinary relief," motions invoking the rule should be granted "only under exceptional circumstances." Id. at 14-15 (quoting Lepore v. Vidockler, 792 F.2d 272, 274 (1st Cir. 1986)). Although many courts have indicated that Rule 60(b) motions should be granted liberally, this Circuit has taken a harsher tack. Davila-Alvarez v. Escuela de Medicina Universidad Central del Caribe, 257 F.3d 58, 63-64 (1st Cir. 2001).

The Supreme Court, in a case exploring the meaning of excusable neglect in the context of a cognate bankruptcy statute held that "the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd. Partnership, 507 U.S. 380, 395. These circumstances include "the danger of prejudice to the [nonmoving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." Id.

In the case at bar, the reasons in light of <u>Pioneer</u>, supra, for rejecting the Rule 60 motion are: a) to do otherwise would cause enormous prejudice to the crossclaimant (<u>Affidavit Of Charles P. Kazarian, Esq. In Response To Opposition Of Cross-Claim Defendants To Motion For Entry Of Separate And Final Judgment And Motion For Relief From Judgment</u>, ¶ 11, 12); b) the crossclaim defendants have without legitimate reason delayed for nearly a year in making a simple filing, that has caused the impossibility of a fair trial for the crossclaimant if the current trial schedule is kept; c) crossclaim defendants had repeated, actual notice from counsel and the Court, *and, four months ago, a direct admonition from the Magistrate Judge in the presence of both crossclaim defendant Caplitz and his attorney that they had better do something about the default that had entered for their failure to answer*; and d) any good faith reason for the original failure to file an answer that allegedly occurred in April 2005 has been completely vitiated by the ensuing actions of crossclaim defendants, all as corroborated by the <u>Affidavit of Charles P. Kazarian</u> filed herewith.

**<u>Excusable Neglect</u>**

Crossclaim defendants must demonstrate, "at a bare minimum, . . . a convincing explanation as to why the neglect was excusable." <u>Cintron-Lorenzo v. Departamento de Asuntos del Consumidor</u>, 312 F.3d 522, 527 (1st Cir. 2002). Nothing in the Rule 60 motion even suggests what the excusable neglect might have been for the failure of nearly a year's duration to answer the crossclaim. For this lapse alone, the Court should not entertain any renewal of the motion. Moreover, in the motion as filed the crossclaim defendants expressly represent to the Court that they "submit the within Affidavits and Memorandum of Law". Unfortunately, this representation is false. <u>Affidavit of Charles P.</u>

3

Kazarian ¶ 10. Without any showing of what the excusable neglect may have been, and with no other attempt by crossclaim defendants to address the Pioneer, supra, standards, the Court should not entertain a renewed Rule 60 motion only on the basis of "detailed affidavits from witnesses setting forth the substance of the evidence in support of every defense proffered in the proposed answer", and the Court is respectfully requested to rescind that portion of its ruling.

In the event of a renewed Rule 60 motion, the Court may wish to consider Stonkus v. City of Brockton Sch. Dep't, 322 F.3d 97, 100-101 (1st Cir. 2003), in which the conduct of movant's counsel was asserted as the basis of the excusable neglect. In upholding the denial of the Rule 60 motion in that case, the Court observed that:

> The stated reasons for the neglect -- confusion over filing dates and busyness (sic) -- hold little water. It is uncontested that Stonkus's counsel received several written documents, both from the defendants' counsel and from the district court, concerning the extended scheduling deadlines; that counsel engaged in telephone and in-person discussions concerning the extended deadlines; and that prior to filing the motion for summary judgment, defendants' counsel again advised Stonkus's counsel of their intent to file a summary judgment motion on June 18, 2002, and reminded Stonkus's counsel that he had thirty days to respond under the extended scheduling order.
>
> We have repeatedly held this type of counsel error to be inadequate to support a determination of excusable neglect within the meaning of Fed. R. Civ. P. 60(b)(1). Torre, 15 F.3d at 15 (fact that appellant's attorney was "preoccupied" with other matters did not constitute excusable neglect), and cases cited. "Most attorneys are busy most of the time and they must organize their work so as to be able to meet the time requirements of mattersthey are handling or suffer the consequences." Id. (quoting Pinero Schroeder v. FNMA, 574 F.2d 1117, 1118 (1st Cir. 1978) (internal quotation marks omitted)).
>
> We question, too, the good faith behind these excuses: there is little indication, for example, of the "frenetic activity to complete discovery" Stonkus's counsel cites. (footnote omitted). And Stonkus never proffered a proposed opposition to summary judgment in her filings to the district court. As to prejudice, although there are no unusual circumstances in this

4

>case, the delay incurred by Stonkus's failure to respond serves to hamper the defendants' interest in certainty and resolution and to further diminish witnesses' memories concerning the events surrounding Stonkus's claims, now more than six years old. In sum, Stonkus's counsel's conduct simply does not warrant relief from judgment under an excusable neglect theory.

Stonkus v. City of Brockton Sch. Dep't, Id. at 101. Accord, Negron v. Celebrity Cruises, 316 F.3d 60, 62 (1st Cir. 2003) ("… routine carelessness by counsel leading to a late filing is not enough to constitute excusable neglect…", citing Graphic Communications Int'l Union v. Quebecor Printing Providence, Inc., 270 F.3d 1, 6-7 (1st Cir. 2001); Mirpuri v. Act Mfg., 212 F.3d 624, 630-31 (1st Cir. 2000).

Under Rule 60(b)(1) relief is not available for a party who simply misunderstands the legal consequences of his deliberate acts. Cashner v. Freedom Stores, Inc., 98 F.3d 572, 577 (10th Cir. 1996). Neither ignorance nor carelessness on the part of a litigant or his attorney will provide grounds for rule 60(b) relief. Bershad v. McDonough, 469 F.2d 1333, 1337; cf. Davila-Alvarez, 257 F.3d at 66 (in rejecting argument that dismissing the case "based on counsel's inexcusable conduct would work an unjust penalty on the litigants" relying on Supreme Court determination in Link v. Wabash R.R. Co., 370 U.S. 626 (1962), that "petitioner voluntarily chose this attorney as his representative . . . and he cannot now avoid the consequences of the acts or omissions of this freely selected agent").

### **The Catchall Clause - Rule 60(b)(6)**

Rule 60(b)(6), which permits a court to grant relief for "any other reason justifying relief from the operation of the judgment", is sometimes called the catchall clause. Ahmed v. Rosenblatt, 118 F.3d 886, 891 (1st Cir. 1997). As expressed

5

in this Circuit:

> A Rule 60(b)(6) motion "must be made within a reasonable time." What is "reasonable" depends on the circumstances. Cf., e.g., Sierra Club v. Secretary of the Army, 820 F.2d 513, 517 (1st Cir. 1987) (explaining that "reasonableness is a mutable cloud, which is always and never the same") (paraphrasing Emerson). Thus, a reasonable time for purposes of Rule 60(b)(6) may be more or less than the one-year period established for filing motions under Rule 60(b)(1)-(3). See Planet Corp. v. Sullivan, 702 F.2d 123, 125-26 (7th Cir. 1983) ("The reasonableness requirement of Rule 60(b) applies to all grounds; the one year limit on the first three grounds enumerated merely specifies an outer boundary.").
>
> Cotto v. United States, 993 F.2d 274, 280 (1st Cir. 1993)

As is amply shone in the Kazarian Affidavit, there is no conceivable manner in which to treat the Rule 60 motion here as timely filed. Over the past year, crossclaim defendants disregarded two extensions in which to file their answer (Kazarian Affidavit ¶2-4) disregarded at least four separate electronic notices of default issues (Kazarian Affidavit ¶ 5,6) and four months ago disregarded a direct admonition from the Magistrate Judge that they had failed to file their answer. (Kazarian Affidavit ¶ 7). This arresting indifference shone by crossclaim defendants should not be countenanced by the Court, regardless of any "defenses" they might deign to disclose on the eve of trial.

Moreover, it is difficult to imagine how crossclaim defendants can meet any of the equitable tests enunciated in Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd. Partnership, 507 U.S. 380, 395 (the danger of prejudice to the [nonmoving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith). If they are able to do so, only then should the Court consider the merits of their defenses. The sole requirement that the Court has seemingly

imposed (a suitable showing that the crossclaimants have meritorious defenses), is best treated as an additional requirement, not the main one.  See Cotto v. United States, 993 F.2d 274, 280 (1st Cir. 1993). Moreover, in this Circuit, a motion under Rule 60(b)(6) is appropriate only when none of the first five sections pertain, and section (6) may not be used as means to circumvent those five preceding sections. Ahmed v. Rosenblatt, 118 F.3d 886, 891 n.9 (1st Cir. 1997); Davila-Alvarez, 257 F.3d at 67 (holding that Rule 60(b)(1) and 60(b)(6) are "mutually exclusive").

### Crossclaim Defendants Have Made Free, Calcualted and Deliberate Choices

The principle is well established that Rule 60(b) does not provide relief from "free, calculated [and] deliberate choices." Ackerman v. United States, 340 U.S. 193, 198, 71 S. Ct. 209, 95 L. Ed. 207, 211 (1950). Rule 60(b) cannot be used to relieve a litigant from improvident strategic choices. See Marshall v. Board of Education, 575 F.2d 417, 424 (3d Cir. 1978); Federal's, Inc. v. Edmonton Investment Co., 555 F.2d 577, 583 (6th Cir. 1977); Lubben v. Selective Service System Local Board No. 27, 453 F.2d 645, 651-52 (1st Cir. 1972). Furthermore, ignorance or mistake of law is not a "mistake" for purposes of Rule 60(b)(1). United States v. O'Neil, 709 F.2d 361, 373 (5th Cir. 1983). Nor is it "excusable neglect".  Chang v. Smith, 778 F.2d 83, 86 (1st Cir. 1985) (citations omitted).

### Prejudice

Crossclaim defendants bear the burden of demonstrating to the satisfaction of the Court the absence of prejudice to Dr. Meiselman. This they have not even tried to do, perhaps because it is an impossible task. As set forth in the Kazarian Affidavit, Dr. Meiselman would be unduly prejudiced by allowing crossclaim defendants to remove the

7

default now. Dr. Meiselman has made material tactical and strategic decisions in the litigation of the crossclaims based upon the apparently total disregard exhibited toward it by the crossclaim defendants. These decisions include refraining from conducting depositions that would have been conducted had the issues been joined, including depositions of: crossclaim defendants' prior litigation counsel, who filed a settlement agreement in the underlying action without conditions precedent having been met; crossclaim defendants' ERISA plan consultant who drafted and advised on the profit sharing plan at issue; TD Waterhouse officials who knew of the self-directed nature of Dr. Meiselman's plan accounts up to the point they were wrongfully liquidated to cash by crossclaim defendants, and others.

In addition, Dr. Meiselman held counsel back from the depositions in this action that were conducted in Indianapolis, as it did not appear sensible to undertake great expense with a grant of a motion for judgment already in hand. Crossclaim defendants by imputation through their attorney knew in advance that Dr. Meiselman's counsel would not be attending these depositions for the reason that *he already had a judgment against them*.

Allowing removal of the default further would prejudice Dr. Meiselman, because with this Court rightly insisting on compliance with the originally-set trial date of February, 2006, Dr. Meiselman has no idea what the legal or factual underpinnings are of any crossclaim defenses that might be asserted for the first time at this, the eleventh hour, and thus no idea of how to prepare for them. Dr. Meiselman has had judgment in hand for a specific sum for over five months. He is entitled to some certainty and finality in the face of the crossclaim defendants' total disregard for the rules of engagement.

Under the circumstances of this case as set forth by affidavit and the docket, the Court's future consideration of the "defenses", if there are any, as the sole basis for reconsideration could well have the effect of emboldening litigants to wait until the eleventh hour to disclose their cards, a high risk strategy to be sure, but one for which this case would have precedent value.

For all of the forgoing reasons, this Court should allow the Rule 54(b) motion filed by Dr. Meiselman, and entertain only Rule 60 motions filed by crossclaim defendants that make *all* of the required showings to the satisfaction of the Court.

Dated: January 24, 2006

>RUDY K. MEISELMAN
>CROSS-CLAIM PLAINTIFF
>By his attorney,
>LAW OFFICE OF CHARLES P. KAZARIAN, P.C.
>
>/s/ Charles P. Kazarian
>_____
>Charles P. Kazarian, Esquire
>77 North Washington Street
>Boston, Massachusetts 02114
>BBO#: 262660
>(617) 723-6676

## DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-12481WGY

| | |
|---|---|
| INDIANAPOLIS LIFE INSURANCE COMPANY | )<br>)<br>) |
| Plaintiff | ) |
| vs. | )<br>) |
| ROSALIND HERMAN, TRUSTEE, FINANCIAL RESOURCES NETWORK, INC., PROFIT SHARING PLAN AND TRUST, FINANCIAL RESOURCES NETWORK, INC., PROFIT SHARING PLAN AND TRUST GREGG D. CAPLITZ, RUDY K. MEIESELMAN, M.D. AND HOPE E. MEISELMAN | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants | )<br>) |
| _____ | ) |
| RUDY K. MEISELMAN, M.D. | )<br>) |
| Cross-Claim Plaintiff | )<br>) |
| vs. | )<br>) |
| ROSALIND HERMAN, TRUSTEE, FINANCIAL RESOURCES NETWORK, INC., PROFIT SHARING PLAN AND TRUST, FINANCIAL RESOURCES NETWORK, INC., PROFIT SHARING PLAN AND TRUST GREGG D. CAPLITZ | )<br>)<br>)<br>)<br>)<br>) |
| Cross-Claim Defendants | ) |

**AFFIDAVIT OF CHARLES P. KAZARIAN, ESQ. IN RESPONSE TO OPPOSITION OF CROSS-CLAIM DEFENDANTS TO MOTION FOR ENTRY OF SEPARATE AND FINAL JUDGMENT AND MOTION FOR RELIEF FROM JUDGMENT**

The undersigned Charles P. Kazarian, Esq., counsel for crossclaimant Rudy Meiselman, hereby swears under the penalties of perjury that the facts asserted herein are true and accurate according to my own personal knowledge:

1. On or about February 9, 2005, on behalf of Dr. Meiselman and in response to the complaint filed by Indianapolis Life in this action, I filed an <u>Answer and Crossclaim</u> (Document No. 12). The crossclaim defendants were and are represented by Wayne R. Murphy, Esq. As it appeared to me at that time that the Court might not have record of Mr. Murphy's participation in the ECF system, out of an abundance of caution I served him in hand with a copy of the <u>Answer and Crossclaim</u>, in addition to any electronic notice he received.

2. On or about March 7, 2005 a Rule 16 scheduling conference was held (<u>see</u>, Document No. 14) at which Mr. Murphy orally requested that I agree to a two-week extension of time for filing his clients response to the crossclaim, and stated as his reason that he was absorbed in a major criminal trial. In light of that I agreed to the extension.

3. Approximately three weeks later, Mr. Murphy had not filed his clients' response to the crossclaim, and telephoned me to request another extension. I advised Mr. Murphy that I would be away from my office until April 5, 2005, and that I would grant him no further extension beyond that date. He assured me that the response would be on my desk upon my return.

4. Upon my return on April 5, 2005, there was no response to the crossclaim on my desk. I checked the ECF system, and it contained no evidence that a response had been filed.

5. On or about May 17, 2005, I filed a <u>Motion for Entry of Default</u> (Document No. 24) based upon the continuing failure of the crossclaim defendants to answer. Mr. Murphy received electronic notice of that motion. Despite having nearly six weeks to respond, crossclaim defendants did not do so, and the Court allowed the motion

unopposed on June 28, 2005, as per the notice in the electronic docket. Mr. Murphy received electronic notice of the Court's decision.

 6. On or about August 4, 2005, I filed a <u>Motion For Default Judgment</u> (Document No. 30), supported by affidavit in which my client Dr. Meiselman sought an award of nearly one million dollars ($938,640.14.00) against the crossclaim defendants. Mr. Murphy also received electronic notice of this motion, but still crossclaim defendants did not respond to it, nor did they attempt to file an answer to the crossclaim. The <u>Motion For Default Judgment</u>, unopposed, was granted by the Court on August 18, 2005, as per the notice in the electronic docket, and electronic notice of same was sent to Mr. Murphy. In response to that notice, the crossclaim defendants failed to file anything with the Court, and continued their failure to answer the crossclaim.

 7. On August 18, 2005 a mediation of this action was held before Magistrate Judge Collings, who confronted Mr. Murphy about the default status of the crossclaims as appearing in the Court's docket. Magistrate Judge Collings indicated to Mr. Murphy that it would be wise to take prompt action in regard to the crossclaim default judgment (without commenting upon what the judicial response might be) and Mr. Murphy indicated that he would do so. Crossclaim defendant Caplitz was sitting next to Attorney Murphy at the time, and could not have failed to hear the admonition.

 8. Even after the mediation session and the admonition by the Magistrate Judge, four more months passed with no action whatsoever on the part of the crossclaim defendants to remove the default or file an answer to the crossclaim. On or about January 6, 2006, I filed for Dr. Meiselman a <u>Motion For Entry Of Separate And Final Judgment Of Default Against Cross-Claim Defendants Pursuant To Rule 54(B)</u> (Document No. 44).

9. Despite first receiving multiple voluntary extensions of time to help the crossclaim defendants avoid default, and then receiving repeated notices from the Court over the prolonged period (eight months) of their default, together with a direct admonition about the problem from a Magistrate Judge more than four months ago, crossclaim defendants still have not even attempted to file an answer to the crossclaim.

10. Almost a full year after being served with the crossclaim, crossclaim defendants have finally made formal acknowledgment of its existence by filing on January 10, 2006 a document entitled <u>Opposition of Cross-Claim Defendants To Motion For Entry Of Separate And Final Judgment And Motion For Relief From Judgment</u> (Document No. 45). In that filing, crossclaim defendants expressly represented to the Court that they "submit the within Affidavits and Memorandum of Law". However, neither Affidavits nor Memorandum of Law whatsoever were submitted to the Court, and none were served on me. It is now 14 days later, the hearing on my Rule 54(b) motion is scheduled for tomorrow, and still no "Affidavits and Memorandum of Law" have been filed.

11. Dr. Meiselman would be unduly prejudiced by allowing crossclaim defendants to remove the default now. Dr. Meiselman has made material tactical and strategic decisions in the litigation of the crossclaims based upon the apparently total disregard exhibited toward it by the crossclaim defendants. These decisions include refraining from conducting depositions that would have been conducted had the issues been joined, including depositions of: crossclaim defendants' prior litigation counsel, who filed a settlement agreement in the underlying action without conditions precedent having been met; crossclaim defendants' ERISA plan consultant who drafted and advised

on the profit sharing plan at issue; TD Waterhouse officials who knew of the self-directed nature of Dr. Meiselman's plan accounts up to the point they were wrongfully liquidated to cash by crossclaim defendants, and others. In addition, Dr. Meiselman held counsel back from the depositions in this action that were conducted in Indianapolis, as it did not appear sensible to undertake great expense with a grant of a motion for judgment already in hand. Crossclaim defendants by imputation through their attorney knew in advance that Dr. Meiselman's counsel would not be attending these depositions for the reason that *he already had a judgment against them*.

      12. Allowing removal of the default further would prejudice Dr. Meiselman, because with this Court rightly insisting on compliance with the originally-set trial date of February, 2006, Dr. Meiselman has no idea what the legal or factual underpinnings are of any crossclaim defenses that might be asserted for the first time at this, the eleventh hour, and thus no idea of how to prepare for them.

Dated: January 24, 2006                /s/ Charles P. Kazarian

                                                       _____
                                                       Charles P. Kazarian