## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

CIVIL NO. 04-12481-WGY
_____

|  |  |
|---|---|
| INDIANAPOLIS LIFE INSURANCE COMPANY | ) |
| Plaintiff | ) |
| v. | ) |
|  | ) |
| ROSALIND HERMAN, TRUSTEE, FINANCIAL RESOURCES NETWORK, INC. | ) |
| PROFIT SHARING PLAN AND TRUST, FINANCIAL RESOURCES NETWORK, | ) |
| INC. PROFIT SHARING PLAN TRUST, GREGG D. CAPLITZ, | ) |
| RUDY K. MEISELMAN, M.D. and HOPE MEISELMAN | ) |
| Defendants | ) |

_____


## MEMORANDUM OF LAW IN OPPOSITION TO
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### Introduction

This Memorandum of Law is written in opposition to the Motion for Summary Judgment filed by plaintiff Indianapolis Life Insurance Company (hereinafter "Indianapolis Life"). In substance, several genuine issues of material fact exist such that Indianapolis Life is not entitled to judgment as a matter of law. A "genuine issue" exists where the evidence before this Honorable Court is of such a nature that a reasonable factfinder could render a verdict in favor of the defendants. *See* Carcieri v. Norton, 398 F.3d 22 (1st Cir. 2005)

The discovery to date, though incomplete, has revealed many issues of material fact that go the heart of the claims made by Indianapolis Life in its claim for return of the premiums paid on the life insurance policies on the lives of Rudy and Hope Meiselman.

MURPHY & ASSOCIATES, P.C.
600 ATLANTIC AVENUE
BOSTON, MA 02210
(617) 227-7777

**Discussion**

The first argument put forth by Indianapolis Life suggests that the defendants are estopped from disputing rescission.  The argument is misplaced.

Prior to the filing of this lawsuit, co-defendant Rudy Meiselman brought suit before this Honorable Court  captioned *Rudy K. Meiselman v. Financial Resources Network, Inc. et al., Civil Action No. 04-12304 WGY*.  By Notice dated November 24, 2004, the matter was dismissed with prejudice.  The resolution of the matter included Meiselman voluntarily resigning from his former employment with Financial Resources Network, Inc. and the rollover of his retirement account, including the monies represented by the returned premiums, from the profit sharing plan of Financial Resources Network to another entity.  Undoubtedly, Indianapolis Life made the decision to rescind the Meiselman policies.  Indianapolis Life now attempts to benefit from its decision to rescind by suggesting that the defendants are unable to litigate whether or not that rescission was lawful.  In its counterclaims, the defendants allege just that; the decision to rescind was in violation of law and they seek reinstatement of the policy.  Just as the Court ruled it nonsensical to require the insurer in <u>Borden v. Paul Revere Life Insurance Company</u>, to "throw good money after bad", it does not make sense to suggest that the defendants are unable to dispute the decision to rescind.   The defendants are not estopped from disputing rescission.

Indianapolis Life next suggests that various misrepresentations in the application of the Meiselman policies warrant the entry of summary judgment.  Discovery to date demonstrates that there exists genuine issues of material fact exist regarding Meiselman's financial condition as it related to the underwriting process.  During their depositions, both Gregg Caplitz and Daniel Goodness testified to a three-way telephone call between themselves and Rudy Meiselman in which Meiselman assisted in the preparation of documentation that would form the

MURPHY & ASSOCIATES, P.C.
600 ATLANTIC AVENUE
BOSTON, MA 02210
(617) 227-7777

basis for the statement of financial condition that was presented to Indianapolis Life. *See Caplitz Deposition 9/23/05 pp. 153-160* and *Daniel Goodness Deposition 11/15/05 pp. 12-13 Exhibits A and B.* In essence both Goodness and Caplitz testified that the financial condition statement sent to the underwriters at Indianapolis Life came directly from information provided by Dr. Meiselman. Caplitz further testified that he believed the information provided by Meiselman to be correct (*Caplitz Deposition p. 160) Exhibit C.* Accordingly, the issues suggested by Indianapolis Life surrounding the involvement of Daniel Goodness in the preparation of the Statement of Financial Condition's in the case, although interesting issues for a factfinder at trial, don't carry any weight in their request for summary judgment. Regardless of the fact as to whether or not the Statement of Financial Condition was accurate or not, Caplitz believed it was and the underwriters at Indianapolis Life had the contrary information from Meiselman's accountant. This information was in their possession prior to the time the placement decision was made. Indianapolis Life should not be able to come back years later and suggest that this information, even if inaccurate, affected their decision to place the Meiselman policies. The evidence to date suggests that it had nothing to do with the placement of the policies.

Indianapolis next suggests that certain alleged misrepresentations in the application process made by the defendants were material and increased the risk of loss. An understanding of the policies is necessary to this Honorable Court's determination as to whether or not there exists any genuine issue of material fact. The Meiselman policies were "second to die" policies. As such, an individual who may, on his own, be uninsurable for one reason or another, can be insured under a second to die policy. (*Caplitz Deposition p. 279) Exhibit D.* The insurer is effectively insuring the life of the second of the two subjects to die. As such, the underwriting

MURPHY & ASSOCIATES, P.C.
600 ATLANTIC AVENUE
BOSTON, MA 02210
(617) 227-7777

process in the instant case took the health, life expectancy and other insurable factors of both Meiselmans into consideration when the placement decision was made.

All medical information that the defendants possessed, including changes from the time of initial application through policy placement, during the underwriting process was communicated to Indianapolis Life.  (*Caplitz Deposition 161-163) Exhibit E.*

Admittedly, the defendants knew nothing about the alleged findings of Dr. Simon made in September, 2003 regarding a purported CT scan which revealed a nodule on Meiselman's lung.  It should be noted that the defendants have sought the CT scans through the discovery process and have not received same.  Indianapolis Life's assertion that knowledge of this claimed medical condition would have resulted in the non-placement of the policies is incorrect. The knowledge of the CT scan would not have affected the underwriting process of these second to die policies. *( Caplitz deposition pp.278,279)Exhibit F.*  The September, 2003 report of Dr. Simon directed that Meiselman have several follow-up scans.  There is no evidence that Indianapolis Life considered these follow-up CT scans or if they even exist.  Most importantly, the evidence produced to date indicates that within one hundred and eighty days of Indianapolis Life canceling the subject policies due to this medical material misrepresentation, another insurance company issued a strikingly similar policy to the Meiselmans. *See Deposition of Rudy Meiselman, 9/19/05 pp. 233-236 Exhibit G.*  This is further evidence that the alleged change in medical condition was immaterial to the underwriting decision.  Genuine issues of material fact exist which preclude the entry of summary judgment.

Under Massachusetts statute, whether misstatement in a policy application is material and can provide a basis for voiding policy on grounds that it increased risk of loss for insurer is ordinarily a question of fact.  <u>McLean Hospital Corp. v. Lasher,</u> 819 F. Supp. 110 (1st Cir. 1993).

MURPHY & ASSOCIATES, P.C.
600 ATLANTIC AVENUE
BOSTON, MA 02210
(617) 227-7777

Many questions of fact exist surrounding the underwriting process which led to the placement of the Meiselman policies.  It is improper to grant summary judgment in this instance.

Indianapolis Life finally urges this Honorable Court to grant summary judgment based upon the allegation that the defendants failed to disclose the continued existence of an additional $20 million life insurance on Meiselman.  This alleged misrepresentation is also in dispute this issue was perhaps best crystallized during the September 23, 2005 continued deposition of Mr. Caplitz,

"…There is no way at all that on the day that the Indianapolis Life policy was put in force that the ING policy could have possibly been cancelled previous to that date because otherwise you would have a potential situation where Dr. Meiselman would not have the coverage in place for the 20 million….There is no way from the initial application…though all of the communication that I had with Pedigo…that there was an understanding that the ING policy would be gone the day the policy was put in force." (*Caplitz deposition pp. 168,9*) Exhibit H

## Conclusion

The arguments set forth by Indianapolis Life attempt to persuade this Honorable Court that the decision to place the Meiselman policies was affected by material misrepresentations which affected their risk of loss and, if known, would have led to the non-issuance of the policies.  These are issues and facts, the determination of which has historically been left to a jury.  Pahigian v. Manufacturers' Life ins. Co., 349 Mass. 78 (1965); Hanover ins. Co. v. Leeds, 42 Mass. App. Ct. 54 (1997) (Whether misstatement in application for insurance increased risk of loss and was, therefore, material is ordinarily question of fact on which insurer bears burden of proof.)

The discovery to date in this matter clearly demonstrates that there exist genuine issues of material fact as to each and every ground advanced by Indianapolis Life in its Motion for Summary Judgment.  Accordingly, the motion should be denied.

-5-                MURPHY & ASSOCIATES, P.C.
                   600 ATLANTIC AVENUE
                   BOSTON, MA 02210
                   (617) 227-7777

The defendants respectfully pray this Honorable Court deny the Plaintiffs' Motion for Summary Judgment.

Respectfully submitted
Rosalind Herman, Trustee, Financial Resources
Network, Inc. Profit Sharing Plan and Trust, Financial
Resources Network, Inc. Profit Sharing Plan and Trust
And Gregg D. Caplitz
By their attorney
 /s/ *Wayne R. Murphy*
Wayne R. Murphy/BBO#557658
Murphy & Associates, P.C.
600 Atlantic Avenue
Boston, MA 02210
(617) 227-7777

MURPHY & ASSOCIATES, P.C.
600 ATLANTIC AVENUE
BOSTON, MA 02210
(617) 227-7777