UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INDIANAPOLIS LIFE INSURANCE COMPANY<br>　　　　　Plaintiff<br><br>v.<br><br>ROSALIND HERMAN, TRUSTEE, FINANCIAL RESOURCES NETWORK, INC., PROFIT SHARING PLAN AND TRUST, FINANCIAL RESOURCES NETWORK, INC., PROFIT SHARING PLAN AND TRUST GREGG D. CAPLITZ, RUDY K. MEISELMAN, M.D. and HOPE E. MEISELMAN<br>　　　　　Defendants<br><br>RUDY K. MEISELMAN, M.D.<br>　　　　　Cross-Claim Plaintiff<br><br>v.<br><br>ROSALIND HERMAN, TRUSTEE, FINANCIAL RESOURCES NETWORK, INC., PROFIT SHARING PLAN AND TRUST, FINANCIAL RESOURCES NETWORK, INC., PROFIT SHARING PLAN AND TRUST and GREGG D. CAPLITZ<br>　　　　　Cross-Claim Defendants | CIVIL ACTION NO. 04-12481WGY |

MEMORANDUM IN SUPPORT OF CROSS-CLAIM DEFENDANT,
ROSALIND HERMAN, TRUSTEE, FINANCIAL RESOURCES
NETWORK, INC., PROFIT SHARING PLAN AND TRUST'S
EMERGENCY MOTION FOR RULING THAT SHE HAS
PURGED HERSELF OF THE CONTEMPT ORDER
(Leave to File Granted on January 11, 2007)

I.　　INTRODUCTION

　　　The cross-claim, plaintiff, Rudy K. Meiselman ("Meiselman") obtained a default

judgment against the cross-claim defendant, Rosalind Herman ("Mrs. Herman") in her capacity

as Trustee of Financial Resources Network, Inc. Profit Sharing Plain and Trust ("FRNI Plan") among others.  Mrs. Herman was subsequently held in contempt of Court for her failure to produce documents and submit to a deposition in aid of collecting that judgment.  On December 21, 2006, this Court (Young, J.) gave Mrs. Herman until January 5, 2007, to purge her contempt and enjoined her from filing any pleadings in any U.S. District Court in the country so long as she remains in contempt.  In addition, the Court dismissed a related case which she had brought against Meiselman for breach of contract, without prejudice, on the condition that she purge herself of the contempt by January 5, 2007.

Mrs. Herman asserts that she has purged herself of the contempt by January 5, 2007, and Meiselman is barred by his own conduct from claiming otherwise.  Mrs. Herman brings this motion to obtain a ruling that she has timely purged her contempt so that she may re-file her claims against Meiselman and correct errors in the execution issued by the Court.  Meiselman has used that erroneous execution to attempt to collect the judgment against Mrs. Herman personally, although no such judgment has ever issued.

II.    FACTS

On November 22, 2006, Magistrate Judge Joyce Alexander entered her Order on Emergency Motion for Contempt ("Contempt Order", Docket no. 78) which states in pertinent part, as follows:

> [T]he parties informed the Court that they agreed to a production of the sought documents on or before November 27, 2006, … and conditionally agreed to hold Ms. Herman's deposition on December 20, 2006, if another deposition she is scheduled to attend in Nevada does not proceed … the Court warned counsel during the hearing, and reiterates now, that cross-claim defendants' failure to provide documents per the above-mentioned agreement will be met with sanctions, possibly an issuance of arrest warrants.
>
> Further, as previously ordered by this Court, counsel for cross-claim defendants acknowledged without argument that cross-claim defendants were responsible for paying

>   the reasonable costs and attorneys' fees associated with the making of cross-claim plaintiff's emergency motion for contempt … .

On December 21, 2006, this Court (Young, J.) ruled from the bench upon the Motion of Defendants Rosalind Herman, Trustee Financial Resources Network, Inc. Profit Sharing Plan and Trust, Financial Resources Network Inc. Profit Sharing Plan and Trust to Stay Enforcement of Judgment (Docket no. 82) as follows;

>   The Court Orders the Motion to Stay DENIED without prejudice to its being renewed should Ms. Herman by Jan. 5, 2007, purge herself of the contempt order issued by Mag. Alexander.  The Court Orders the related case DISMISSED without prejudice should Ms. Herman purge herself of the contempt.  Rosalind Herman as Trustee and individually is enjoined from filing any pleadings in any U.S. District Court in the country so long as she is under the contempt order.

Electronic Clerk's Notes (December 21, 2006).

Herman submitted to a deposition by Meiselman on January 5, 2007, the last date permitted by the Court to purge her contempt, only because that was the only date on which Meiselman's counsel was willing to conduct that deposition.  Prior to the date of the deposition, Mrs. Herman produced all of the documents in her possession, custody and control as requested on the Schedule A appended to the Second Renewed Notice of Deposition in Aid of Execution (Rosalind Herman).

As attested by Mrs. Herman in her affidavit, filed herewith, after the show cause hearing held before Magistrate Judge Alexander on November 20, 2006, she immediately undertook a search for a new attorney and, on December 13, 2006, she first met with her current counsel, Robert D. Cohan ("Cohan") and hired him shortly thereafter.  Since then she has made every effort to comply with  the Contempt Order (Docket no. 78).  Prior to hiring Attorney Cohan, the Contempt Order required Mrs. Herman to produce documents on or before November 27, 2006, and she produced such documents as directed by her then attorney of record, Wayne Murphy

3

("Murphy").  <u>Affidavit of Rosalind Herman, Trustee, Financial Resources Network, Inc. Profit Sharing Plan and Trust</u> ("<u>Herman Aff.</u>") par. 2-3.

Although Mrs. Herman was required by the <u>Contempt Order</u> (Docket No. 78) to appear for deposition on December 20, 2006, on December 18, 2006, she was admitted to Beth Israel Hospital for tests in connection with symptoms suggestive of a stroke and she was physically unable to attend as scheduled because she was recuperating.  On December 20, 2006, Attorney Cohan faxed Attorney Charles Kazarian ("Kazarian"), Meiselman's attorney, a letter, <u>Exhibit A</u>[1], informing Kazarian that she would be unable to attend.  Cohan subsequently sent a follow-up letter, <u>Exhibit B</u>, including a letter from Mrs. Herman's doctor confirming that she could not attend for medical reasons.  <u>Herman Aff.</u> par. 4-5.

Mrs. Herman attests that, with the advice of her new attorney, she has done everything she possibly could to produce the documents requested by Meiselman.  The requests for documents were in some respects ambiguous but she did her best to make production broadly. Documents were produced on December 27, 2006, with a letter from her attorney, <u>Exhibit C</u>, indicating precisely what she was unable to produce, which was not very much.  She subsequently found and produced an additional excise tax bill prior to the deposition.  See also <u>Exhibit D</u>, her formal responses to the request for documents, and <u>Exhibit E</u> which sets forth each request followed by the identification of the documents produced.  <u>Herman Aff.</u> par. 6-8.

With respect to request no. 1 for bank statements, "for any bank account in which you have an interest", this could only mean FRNI accounts because only the FRNI Plan was sued. Nevertheless, Mrs. Herman interpreted this broadly and also produced her personal statements. See <u>Exhibit E</u>.  By letter dated December 21, 2006, <u>Exhibit F</u>, Kazarian requested in addition bank statements of Financial Designing Consultants Inc. ("FDCI").  Although Mrs. Herman

---

[1]   All exhibits referenced are appended to the <u>Herman Aff.</u> unless otherwise specified.

believed this was beyond the scope of Meiselman's request, she produced those documents as well.  See e-mail string, Exhibit G.  Cohan advised Kazarian in an e-mail of January 3, 2007, Exhibit G, to identify any documents which Kazarian claims were not produced but Kazarian did not do so prior to the deposition.  Herman Aff. par. 9-11.

Mrs. Herman submitted to deposition on January 5, 2006, the last date set by Judge Young to purge her contempt, because Kazarian refused to take the deposition on an earlier date.  At the deposition, she answered all of the questions put to her truthfully and to the best of her knowledge and ability.  Id. par. 12-13.

At that deposition, Kazarian stated on the record that Mrs. Herman substantially complied with the Contempt Order and, further, that he would not "make any big issue about contempt."  See excerpt from Mrs. Herman's deposition, Exhibit H.  After the deposition was concluded, by letter dated January 8, 2007, Exhibit I, Kazarian identified for the first time additional documents which he claims were improperly withheld.  He also claimed that Mrs. Herman was still in contempt; however, Mrs. Herman believes he is wrong.  Herman Aff. par. 14-15.

Mrs. Herman did not produce the documents which Kazarian now claims she should have produced either because they do not exist, or they were beyond the scope of his request, or by inadvertence.  Specifically:

      a.    She did not produce her personal tax return for 2005 because it has not yet been prepared.  It is on extension.

      b.    Although Kazarian claims her personal tax returns were unsigned by the preparer, all personal returns were signed by Mrs. Herman and her husband.  She does not have returns signed by the preparer.  The copies of FRNI's tax returns are signed by the Controller, Daniel Goodness ("Goodness").  She does not have copies signed by him as the preparer.

      c.    No Schedule K-1s were attached to her personal returns because they were not required to be attached.

5

        d.        None of her Schedule 1099s were produced by mistake.  The cross-claim defendant, Gregg Caplitz's 1099's were produced inadvertently.

        e.        Kazarian claims she did not provide statements from "all banks" and now claims that this should include her "shell companies".  This is the first time that he indicated that he was looking for specific accounts from additional entities.  There is only one, the statements from Fargo Bank standing in the name of The Knew Finance Experts Inc.  No reasonable person could understand that this account was required to be produced and Mrs. Herman certainly did not understand that she was required to produce it.

Herman Aff. par. 16.

In the spirit of cooperation, Cohan sent Kazarian a letter on January 11, 2007, Exhibit J, by which Mrs. Herman provided additional documents which Kazarian requested for the first time in his letter of January 8, 2007, Exhibit I, but which were not part of the original request and therefore not subject to the Contempt Order (Docket No. 78), as well as several 1099's for small sums inadvertently omitted.  See also Cohan's January 16, 2007 letter, Exhibit K, which correctly lists the additional documents produced and produces additional documents she was able to locate.  Herman Aff. par. 17.

Furthermore, Kazarian's bill for over $6,000, which was required by the Contempt Order (Docket no. 78) to be paid, has been paid in full.  Herman Aff. par. 18.

It is particularly important for Mrs. Herman to obtain a ruling that she has purged the contempt on or before January 5, 2007, because Judge Young appears to have ordered that she cannot re-file her claim against Meiselman for breach of contract unless her contempt is purged by that date.  He further ordered that unless and until she purges her contempt, she can not file anything in any U.S. District Court in the country and that prevents her from going back to Court to stop Meiselman from going after her personal assets to collect a judgment against her personally, although no such judgment was ever issued by this Court.  The only outstanding

6

judgment is one against her as Trustee.  It is vitally important for her to get back into Court to bring this to the Court's attention and stop Meiselman from going after her personal assets.  He has already attached her home in Woburn and he is bringing proceedings in Nevada to attach her home there as well.  Id. par. 20.

Mrs. Herman has also filed herewith the Affidavit of Daniel Goodness ("Goodness Aff.").  Goodness is an Enrolled Agent licensed by the Internal Revenue Service to prepare tax returns and represent tax payers in IRS proceedings.  He is the President and owner of Bottom Line Specialists, Inc., which engages in the business of accounting, bookkeeping and tax services.  Since 1999, he has prepared Mrs. Herman's personal tax returns and also the tax returns for FRNI.  He is also the Controller of FRNI.  Id. par. 1-2.

Goodness also attests that Mrs. Herman's personal tax return for 2005 has not yet been prepared as it is on extension.  The document does not exist.  The extension ended October 2006, but this will not result in a penalty to Mrs. Herman because she has overpaid her taxes for 2005.  Goodness cannot finish the return without information from FDCI which will not become available until he complete that tax return.  He cannot complete FDCI's 2005 return until he receives additional financial information from FDCI, which he expects to receive shortly.  Based upon prior years, he estimates that Mrs. Herman's income will be between $30,000 and $40,000 for 2005.  Id. par. 3.

As an Enrolled Agent, Goodness is knowledgeable about IRS rules and regulations.  He signed Mrs. Herman's personal tax returns as preparer but the signed originals were filed with the IRS.  He did not keep signed copies.  He also signed FRNI's returns as Controller so there was no reason to sign as preparer as well.  There are no K-1 schedules attached to Mrs. Herman's personal tax returns because they are not required to be attached.  At the request of Mrs.

7

Herman's attorney, on January 10, 2007, Goodness forwarded a 2004 K-1 schedule from FDCI reflecting ordinary income to Mrs. Herman of $716,344 (with a sec. 179 deduction of $9,640). Id. par. 4-5.

Goodness worked with the cross-claim defendant, Gregg Caplitz ("Caplitz") of FRNI to produce the documents requested by Meiselman and, through oversight, they failed to produce Mrs. Herman's 1099s for 2004 and 2005 although they are in Goodness's possession. 1099 forms issued to Caplitz were produced by mistake instead. When this oversight was brought to Goodness's attention, on January 10, 2007, he forwarded to Herman's attorney four 1099s for interest income earned in 2005, totaling under $3,000 and two 1099s for interest income earned in 2004 totaling about $13,000. He subsequently found four more for interest income of about $20,000 for 2003, which he also promptly forwarded. He has kept no documents for the years 2002 or earlier because he routinely shreds all client records after three years. Id. at 6-8.

III.   ARGUMENT

   A.   THIS COURT SHOULD RULE THAT MRS. HERMAN HAS PURGED HER CONTEMPT BY THE COURT'S DEADLINE OF JANUARY 5, 2007.

Mrs. Herman has purged her contempt by January 5, 2007, as ordered by this Court because she has submitted to deposition and produced the documents required by the Contempt Order (Docket no. 78), which are in her possession, custody or control. Any documents not produced either do not exist, or were not requested or were inadvertently omitted and subsequently promptly produced when the error was discovered. Facts, at 5-8, above.

Fed. R. Civ. P. 34(a) requires Mrs. Herman to produce only those documents which are in her, "possession, custody or control." She therefore cannot be faulted for failing to produce documents which do not exist. Impossibility of performance constitutes a defense. Star Financial Services, Inc. v. AAStar Mortg. Corp., 89 F.3d 5, 13 (1st Cir. 1996).

8

Furthermore, she cannot be faulted for failing to produce bank statements for corporations not a party to this action where Meiselman's requests for documents designated nothing more than statements, "in which <u>you</u> have an interest". <u>Exhibit D</u>, par. 8 (emphasis supplied). Mrs. Herman interpreted this to mean FRNI statements and also her personal statements, although she is not a party to this action personally; and she subsequently produced FDCI statements upon Meiselman's request. <u>Facts</u>, at 4-6, above. She cannot be held responsible for Meiselman's ambiguous designation of the bank account statements he desired. He is obligated to designate documents, "with reasonable particularity." <u>Brown v. U.S.</u>, 276 U.S. 134, 143 (1928) quoted in Fed. R. Civ. P. 34, <u>Advisory Committee Notes</u>, <u>1946 Amendment</u>. If Meiselman wanted bank statements for other entities, he should have made some designation to that effect. Meiselman cannot use his own obfuscations to extend the contempt. Contempt is a "clear and undoubted disobedience" of a "clear and unambiguous" command. <u>Star Financial Services, Inc.</u>, 89 F.3d at 13; <u>United Factory Outlet v. Jay Stores, Inc.</u>, 361 Mass. 35, 36, 278 N.E.2d 716, 717 (1972). It cannot be said that the command with respect to bank accounts is clear and unequivocal, or that Mrs. Herman undoubtedly violated the order by failing to produce bank statements which were not clearly identified.

With regard to the documents which Mrs. Herman failed to produce, they are limited to Form 1099s and they were immediately produced when this oversight became known. This inadvertent failure of a very small number of documents cannot be said to be a continuing contempt of Court given her valiant production efforts. The Court retains, "the discretion to withhold a contempt adjudication for de minimis violations." <u>NLRB v. Hospital San Francisco, Inc.</u>, 989 F.2d 484 *3 (1st Cir. 1993) (unpublished op.) citing <u>NLRB v. Ralph Printing and Lith. Co.</u>, 379 F.2d 687, 691-92 (8th Cir. 1967). Inadvertent violations of a Court order should not be

punished.  See e.g., In re Augustino Enterprises, Inc., 13 B.R. 210, 212 (Bktcy. Mass. 1981) (stay in bankruptcy).  Where a party is in contempt of Court for failure to comply with a discovery order, the Court "may make such orders in regard to the failure as are just".  Fed. R. Civ. P. 37(b)(2) and (d).  "Willfulness" is a factor to be considered in the choice of sanctions.  Fed. R. Civ. P. 37, Advisory Committee Notes, 1970 Amendment, Subdivision (d).

For the foregoing reasons, the Court should rule that Mrs. Herman has purged her contempt by the Court's deadline of January 5, 2007.

### B. MEISELMAN HAS ACKNOWLEDGED THAT SUFFICIENT PRODUCTION HAD BEEN MADE BY MRS. HERMAN TO PURGE THE CONTEMPT, AND HE COMES TO COURT WITH UNCLEAN HANDS.

At Mrs. Herman's deposition, Meiselman's counsel unequivocally acknowledged that Mrs. Herman was no longer in contempt and he would not object to her efforts to obtain a court ruling to that effect.  With outrageous duplicity, only after the deadlines had passed, when it was too late for Mrs. Herman to cure any inadvertent failure to produce documents, did Kazarian claim for the first time that production was inadequate.  In response, Mrs. Herman immediately addressed Kazarian's claims and produced additional documents.  Facts, at 5-8, above.  Any inability to purge her contempt by the January 5, 2007, deadline was therefore caused by Meiselman's inequitable conduct.

Any objection which Meiselman now raises to the instant motion is not motivated by a good faith desire to obtain the necessary documents, all such documents have been produced.  Meiselman's motives are clearly to prevent Mrs. Herman from pursuing her legitimate claims against him in the companion case for breach of contract which Judge Young dismissed without prejudice.  Should the Court now rule that Mrs. Herman has failed to purge her contempt by January 5, 2007, then Mrs. Herman may be barred by Judge Young's order from re-filing those

10

claims.  Facts, at 3,6, above.   In fact, Kazarian insists that Mrs. Herman is now barred from re-filing her claims against Meiselman, Exhibit I, at 2, although Judge Young's order, quoted at 3, above, is not entirely clear in that regard.

Meiselman has acted in bad faith in several respects.  First, he insisted on taking Mrs. Herman's deposition on January 5, 2007, Judge Young's deadline, thereby permitted Mrs. Herman no time thereafter to cure a deficiency in production which might be discovered at the deposition.  Second, and perhaps most outrageously, Kazarian misled Mrs. Herman to believe that her document production was satisfactory, thereby lulling her into inaction as to further production until the January 5 deadline had passed.  Then, after the deadline, Kazarian provided a detailed claim of continuing failures to produce, most of it spurious, in order to prevent Mrs. Herman from having her day in court on the companion case dismissed by Judge Young.  This late demand for additional documents was made despite the fact that, prior to January 5, 2007, and again at the deposition, Mrs. Herman's counsel expressly requested Kazarian to identify documents not produced.  Herman Aff., par. 11-17.

Meiselman therefore comes into Court with unclean hands and he should be denied any relief because of his inequitable conduct.  A court, "will not redress a wrong when he who invokes its aid has unclean hands."  U.S. v. Payner, 447 U.S. 727, 745 (1980) quoting Olmstead v. U.S., 277 U.S. 438, 483 (1928).  Unclean hands has historically been regarded as a valid equitable defense and the Court, "is presumed to possess the broad discretion and equitable power to configure its remedy to suit the needs of the case."  Williams v. Jones, 11 F.3d 247, 256 (1st Cir. 1993).

Because Mrs. Herman was lulled into the false belief that she has purged her contempt, she took no further action to produce documents and therefore was unable to purge any further

contempt until after the deadline passed when her inadvertent failure to produce Form 1099s was brought to her attention. She is entitled to avoid further sanctions because of her inability to purge the contempt brought about by Meiselman's conduct. See, Maggio v. Zeitz, 333 U.S. 56, 76-77 (1948) (court will balance assertion of inability against need to prevent deliberate defiance of law); NLRB v. Trans Ocean Export Packing Inc., 473 F.2d 612, 615 (9th Cir. 1973) (respondent must show why unable to comply); Parker v. U.S., 153 F.2d 66, 72 (1st Cir. 1946) (civil contemnor adjudged bankrupt was released from duty to pay compensatory fine).

In any event, it would be inappropriate to bar Mrs. Herman from re-filing her claims against Meiselman where she has cured her contempt. Civil contempt is a remedy used to coerce a defendant into compliance with the Court's order. Woods v. O'Brien, 78 F. Supp. 221, 222 (D. Mass. 1948). Punishment should end upon compliance. Shillitani v. U.S., 384 U.S. 364, 370-72 (1966). The Court should not impose an unconditional penalty. Penfield v. SEC, 330 U.S. 585, 595 (1947) (affirming order setting aside unconditional fine imposed in civil contempt proceeding).

For the foregoing reasons, Meiselman's counsel has acknowledged that sufficient production has been made to cure the contempt and his inequitable conduct excuses any inadvertent failures on Mrs. Herman's part.

IV. CONCLUSION

For the reasons set forth above, this court should rule that Mrs. Herman has purged herself of the Contempt Order (Docket no. 78) by January 5, 2007 and she is no longer in contempt of Court.

13

        Respectfully submitted,
ROSALIND HERMAN, TRUSTEE,
FINANCIAL RESOURCES NETWORK,
INC., PROFIT SHARING PLAN AND
TRUST and FINANCIAL RESOURCES
NETWORK, INC., PROFIT SHARING
PLAN AND TRUST
Defendants and Cross-Claim Defendants
By Their Attorney s
COHAN RASNICK MYERSON LLP

_____
Robert D. Cohan, Esquire (BBO #088300)
One State Street, Suite 1200
Boston, MA  02109
(617) 742-1820
rcohan@crmllp.com

### CERTIFICATE OF SERVICE

    I hereby certify that this document, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants on January 17, 2007.

        \s\ Robert D. Cohan
        Robert D. Cohan, Esq.

C:\Myfiles\H\Herman, Rosalind\Memorandum of Support for Ruling 1-16-07.doc