## DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-12481WGY

| | |
|---|---|
| INDIANAPOLIS LIFE INSURANCE COMPANY | )<br>)<br>) |
| Plaintiff | ) |
| vs. | )<br>) |
| ROSALIND HERMAN, TRUSTEE, FINANCIAL RESOURCES NETWORK, INC., PROFIT SHARING PLAN AND TRUST, FINANCIAL RESOURCES NETWORK, INC., PROFIT SHARING PLAN AND TRUST GREGG D. CAPLITZ, RUDY K. MEIESELMAN, M.D. AND HOPE E. MEISELMAN | )<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants | ) |
| | )<br>) |
| RUDY K. MEISELMAN, M.D. | )<br>) |
| Cross-Claim Plaintiff | ) |
| vs. | )<br>)<br>**)** |
| ROSALIND HERMAN, TRUSTEE, FINANCIAL RESOURCES NETWORK, INC., PROFIT SHARING PLAN AND TRUST, FINANCIAL RESOURCES NETWORK, INC., PROFIT SHARING PLAN AND TRUST, and GREGG D. CAPLITZ | )<br>)<br>)<br>)<br>)<br>) |
| Cross-Claim Defendants | ) |

### OPPOSITION OF CROSS-CLAIM PLAINTIFF TO MOTION OF CROSSCLAIM DEFENDANT HERMAN FOR RULING THAT SHE HAS PURGED HERSELF OF THE CONTEMPT ORDER

### Summary of Arguments

Crossclaim plaintiff Meiselman hereby opposes the motion of crossclaim defendant Herman for a ruling that she has purged herself of her contempt for the orders issued by this Court. As grounds therefore, Meiselman states:

1. Herman and her cross-claim co-defendant Caplitz are engaged in an illegal income shifting scheme, as Meiselman has learned only in the recently begun depositions in aid of execution. It will not bode well for Caplitz or Herman to be fully forthcoming about this scheme, and in fact Herman has specifically failed to provide key documents relevant to the scheme. There are serious issues regarding Herman's failure to seek prior to January 5, 2007 documents from the man she described in her deposition as her "controller", Daniel Goodness, who apparently controls Herman's financial documents as well as those of the multiple shell companies in which she has interests.

2. Herman had not purged herself of contempt by January 5, 2007, as was required per the unambiguous order of Judge Young and although she has provided a few more documents since that date, she remains partially non-compliant. Her current non-compliant status caps a long history of disregard for the orders of the court, and as such she deserves no latitude from this Court. Please see Affidavit of Charles P. Kazarian, attached hereto.

3. Insofar as Herman did not purge her contempt by January 5, 2007, Judge Young's order must stand, i.e., Herman is now barred from filing any motions in the instant case, and may not file a complaint against Meiselman in any United States District Court. Herman asserts that she needs the purge finding to escape this bar, and suggests she has a meritorious argument to forestall further collection action against her in her individual capacity (Meiselman has an execution against her and the other cross-claim defendants for over $1,000,000.00) on the grounds that collection should be directed only against her in her ERISA trustee capacity. The Court should not be swayed by this, as

Herman's argument is specious under the ERISA statute and long-standing Massachusetts case law, as will be discussed below.

I. **Herman is Hiding Assets, Has Not Complied With The Court's Orders, And Remains In Contempt**

   **A. The Scheme**

   Caplitz has testified under oath, and Herman has corroborated under oath that Caplitz has earned insurance sales commissions of approximately $1.8 million dollars in 2003-2004. None of this income earned by Caplitz appears on any of the unsigned income tax returns for the relevant period as produced by Caplitz. Caplitz' explanation for this is that he has assigned all of that income to Herman, or more specifically, one of the five shell companies Herman operates, which exist for no purpose other than to move the same monies around and as part of Herman's estate planning devices. The testimony from both of these crossclaim defendants makes clear that there is no consideration for Caplitz' alleged assignment to Herman of his huge earnings to Herman other than forgiveness of a loan of approximately $13,000.00 Herman made to Caplitz in the early 1990s.

   To make matters worse, Herman has testified that the entire $1.8 million assigned to her by Caplitz was deposited in the USBank account of one of her wholly-owned (via another LLC holding company) shell companies, Financial Designing Consultants, Inc. (FDIC). The most recent USBank statement of FDIC Herman provided shows a balance of under $30,000.00 in that account. She has stated under oath that she cannot account for the whereabouts of the other $1.7 million dollars plus in cash, other than to make the bizarre and unsupported suggestion that she has paid Wayne Murphy, Esq. over $500,000.00 to handle the underlying matters between the parties..

**B. Herman's Tax Returns As Provided Are Dubious**

Herman has the gall to submit the affidavit of Daniel Goodness. Goodness is a central character in the misrepresentation and collusion that has characterized Herman's (and Caplitz's) part in the underlying transactions. It was Daniel Goodness, not a CPA, who falsified Meiselman's financial information communicated by Herman and Caplitz to plaintiff Indianapolis Life Insurance (ILIC) by masquerading as his father, A. James Goodness, which misrepresentation was a basis on which Judge Young entered summary judgment for ILIC on its prayer for rescission. In her deposition Herman described Daniel Goodness as her "controller". His name is printed as preparer on all tax returns she has provided, but not his signature. This is highly alarming, because in a prior deposition in this case, on November 15, 2005, page 22, Daniel Goodness testified under oath, in response to the question "And what about Mrs. Herman, have you ever done a tax return for Mrs. Herman?", as follows: "**No, I have not, although I am hired to do so, we just haven't been able to complete her tax returns".** As noted above, the tax returns provided by Herman designate Daniel Goodness as the preparer, but do not contain his signature, and given that Goodness has denied under oath that he prepared any tax returns for Herman, it cannot be stated with any certainty that Herman is in compliance.

II. **Herman Has Failed To Supply Relevant Documents, And Remains In Contempt**

Herman has a history of playing fast and loose with the Court is well documented. Please see Affidavit of Charles P. Kazarian attached hereto. Some of Herman's failure to produce is candidly admitted in her current Memorandum, and in Attorney Cohan's cover

letter to undersigned counsel dated December 27, 2006 (Exhibit C to Herman's Memorandum) which covers the first meaningful production of anything by Herman since Meiselman received this Court's judgment over a year ago. In that letter, Attorney Cohan tries to explain away numerous omissions from production, which demonstrates as clearly as anything Herman's non-compliance.

Herman has not produced:

a. personal tax return for 2005. That it has not yet been prepared or is on extension would have been best demonstrated by documentation, such as an extension request, which has not been produced, nor have any of the schedules or forms to be used in preparing the 2005 return been produced. Recently, Herman produced an unsigned IRS extension form for 2005.

b. personal tax returns *as filed,* nor FRN tax returns *as filed*. The copies provided are all unsigned by the purported preparer, Daniel Goodness, d/b/a "Bottom Line Specialists". See Argument IB above.

c. Schedule K-1 forms attached to any of the personal returns, despite that fact that K-1 losses/gains appear on the returns.

d. Until after her January 5, 2007 deposition no schedule, 1099 or the like reflecting or corresponding to an income spike of over **$716,344.00** on her 2004 personal return, or any K-1s for 2001-2003 or 2005. Please note that under questioning Herman could not account for the source of this huge income, and again, even though the money is described on the return as K-1 income, no Schedule K-1 had been provided prior to the deposition, although the 2004 K-1 allegedly issued to Herman by her wholly-owned shell company, Financial Designing Consultants, Inc., (FDCI) showing $716,344.00 as

Herman's share of FDCI's income was produced only several days after Herman was deposed.

 e. statements from **all** banks in which she has an interest. She has failed to define "interest" as inclusive of her interest in her shell companies. She has not provided statements for the banking of Knew (sic) Financial Experts, Inc., or New England Financial Independence Group, Inc., or the umbrella company, Financial Family Holdings, LLC, all of which she has interests in, according to her sworn testimony.

 f. documents she claims are in the possession of Daniel Goodness, who she described repeatedly as her "comptroller", and has described as having possession of many relevant documents, including some of those she failed to produce. *Herman testified at her deposition that she did not make inquiry of Goodness relative to the document production.*

 All of this demonstrates Herman's failure to purge. However, there is more. The language in the deposition notice's Schedule A, made part of the Court's order (Doc. 80), calls for "any bank account in which you have an interest". Herman has to her own peril elected to take the position that the quoted language does not extend to bank accounts in the name of several shell companies which she testified at deposition that are wholly-owned by her, such that she did not produce bank records for these companies. A reasonable person under a contempt order reasonably attempting to comply would not take such a risk.

 In complaining about the overlap of the January 5, 2007 deposition date and the purge deadline set by Judge Young, Herman forgets to inform this Court that Judge Young had originally pronounced from the bench at the December 21, 2006 hearing that

January 2, 2007 would be the deadline, as the court stenographer's notes will reflect. In the interest of fair play undersigned counsel immediately requested Judge Young to extend the deadline to January 5. Judge Young described my request as "gracious", and allowed it. Attorney Cohan was present before the Court as all of this transpired. He now accuses me of refusing to take Herman's deposition before January 5. His temerity in doing so correlates to his client's contempt for the court and the other litigants. Attorney Cohan stood by on December 21, 2006 and accepted my gracious request for extension knowing full well he had a long-standing appointment for day surgery on January 4, yet he remained silent in court on that point, and equally silent on it in my hour-long conversation with him after court that day.

Furthermore, Attorney Cohan's assertion that January 5th is the only day I would do the deposition is at best misleading. Rather, given Herman's utter disregard for the orders of this court (see Affidavit of Charles P. Kazarian) I duly advised Mr. Cohan that I could not in good conscience schedule Herman's deposition until I had her document production, in that Magistrate Judge Alexander's very first order that Herman ignored called for production of documents five days in advance of the deposition. Mr. Cohan projected that he would have Ms. Herman's documents to me no earlier than December 27, 2006. Five days from that projected date fell on January 4, and for the first time Attorney Cohan informed me he was having surgery that day. I told him I could in no event predict whether the response would be compliant. When I received the document package from him on December 27, 2006, I was shocked to find that Mr. Cohan's cover letter actually contained admissions as to the missing documentation. Mr. Cohan did insist that I tell him what else was missing, and I informed him that I would have no idea

until I reviewed it all, but that his own client would be the best person to consult about that.

### III. The Motion Bar Ordered By Judge Young Must Be Made Permanent, And In Any Event The Motion Herman Wishes To File Is Without Merit

Herman alludes to the idea that she is entitled to relief because while the execution is against her individually, the underlying judgment is against her as trustee. This is nothing but a red herring. In the text of the crossclaim (Doc. 12), at paragraph 3, Meiselman asserts:

> Defendant in Cross-Claim Rosalind Herman, (Herman) is a natural person with a last known address of 27 Davis Street, Woburn, Massachusetts. Herman is President, Treasurer, Secretary and a Director of FRNI, as well as, upon information and belief, sole shareholder. Herman is also Trustee of the FRNI PSP. Herman in her business capacity acts as the PSP Administrator and sole trustee of the 401(k) profit sharing plan on behalf of FRNI.

Even the most cursory review of the crossclaim as a whole reveals that all counts naming Herman therein are directed at her, individually. Count II, which alleges breach of contract, addresses conduct on the part of Herman as well as Financial Resources Network, Inc. Count III clearly alleges a breach of fiduciary duty on the part of Herman. Count IV again alleges breach of contract as to Herman, Financial Resources Network, Inc. and Caplitz. Finally, Count V alleges the tort of conversion against the same three crossclaim Defendants.

Moreover, ERISA law under which the crossclaim was brought against Herman states as follows, at 29 USC § 1109(a):

> **Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to**

>**restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.**

Attorney Cohan has known of this provision of ERISA law since at least December 21, 2006 when he received a letter from me of that date setting forth 29 USC § 1109(a), which letter he has now attached to his memorandum as Exhibit F. Moreover, long-standing Massachusetts law makes clear that there is no meaningful difference from the liability point of view between the trustee capacity or individual capacity of a party:

> When the legal title to property is in the name of a trustee, he is individually liable for its defective condition; and an execution in an action at law should run against the trustee as an individual, whether he had a right to indemnity from the trust fund or not. The description of John Ramsdell as "trustee," in the writs in the tort actions, was surplusage and should be disregarded. The judgments and executions should have been issued against him personally. Gardiner v. Rogers, 166 N.E. 763 (Mass. 1929) (internal citation omitted).

It would be ridiculous to suppose under the factual assertions in the crossclaim (Doc. 12) and the legal principles involved that the grave breach of trustee duties asserted against Herman, reduced to judgment and execution and surviving her appeal could now somehow be limited in collection to trust property.

Moreover Herman again disregards the clear mandate of a rule. Rule 9 of the Federal Rules of Civil Procedure requires that "when a party desires to raise an issue as to…the capacity of any party to be sued…or the authority of any party to sue or be sued in a representative capacity, he shall do so by specific negative averment…". There is no such specific negative averment in Hermans' answer to the crossclaim, because Herman never in any capacity answered the crossclaim. She should not now be heard to complain

about capacity, particularly where she was clearly put on notice from the very beginning that Meiselman was crossclaiming against her.

The assertion that Meiselman has "unclean hands" is without any factual basis. Herman asserts that undersigned counsel "lulled" her. Exhibit H of Herman's memorandum, entitled "Excerpt of Deposition", contains at page 5 beginning on line 9, precisely what I stated on the record as to some of the non-produced documents. At no time did I indicate satisfaction with the production of documents. The only unclean hands are those of Herman and Caplitz, who disregard the orders of this Court, fail and refuse to pay what they owe, take in and shift money around, feign ignorance, defer questions to their "controller" who is a demonstrated fraud, and is either lying or must call Herman a liar as to what tax returns he prepared or signed.

They criticize Meiselman for respecting the order of District Judge Young. That order is clear. Where Herman has not purged the contempt by January 5, 2007, the bar on filing new actions and upon filing motions should be made permanent. Herman is a judgment debtor doing her best to evade her obligations. It cannot be said that Judge Young exceeded his general superintendence powers by setting a compliance bar date on her that is rendered permanent by non-timely compliance. The cases cited by Herman as to the impropriety of permanent fines are not on point. The Court is free to decide what will reasonably deter future disregard of its orders. Yates v. United States, 355 U.S. 66, 74 (U.S. 1957).

For all of the forgoing reasons, Herman's motion should be denied, and Judge Young's order be made permanent.

Dated: January 29, 2007    RUDY K. MEISELMAN
                           By his attorney

                           /s/Charles P. Kazarian
                           _____
                           LAW OFFICE OF CHARLES P. KAZARIAN, P.C.
                           BBO: 262660
                           77 N. Washington Street
                           Boston, MA 02114
                           617 723-6676

.

## DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-12481WGY

| | |
|---|---|
| INDIANAPOLIS LIFE INSURANCE COMPANY | ) ) |
| Plaintiff | ) |
| vs. | ) ) |
| ROSALIND HERMAN, TRUSTEE, FINANCIAL RESOURCES NETWORK, INC., PROFIT SHARING PLAN AND TRUST, FINANCIAL RESOURCES NETWORK, INC., PROFIT SHARING PLAN AND TRUST GREGG D. CAPLITZ, RUDY K. MEIESELMAN, M.D. AND HOPE E. MEISELMAN | ) ) ) ) ) ) ) |
| Defendants | ) ) |
| RUDY K. MEISELMAN, M.D. | ) ) |
| Cross-Claim Plaintiff | ) |
| vs. | ) ) **)** |
| ROSALIND HERMAN, TRUSTEE, FINANCIAL RESOURCES NETWORK, INC., PROFIT SHARING PLAN AND TRUST, FINANCIAL RESOURCES NETWORK, INC., PROFIT SHARING PLAN AND TRUST, and GREGG D. CAPLITZ | ) ) ) ) ) ) |
| Cross-Claim Defendants | ) |

### AFFIDAVIT OF CHARLES P. KAZARIAN IN SUPPORT OF MOTION FOR CONTEMPT

The undersigned Charles Kazarian hereby swears under the penalties of perjury that the following facts are true according to my own personal knowledge:

1. I have acted as counsel for cross-claim plaintiff Rudy Meiselman in this action since its inception.

2. My client obtained execution against the cross-claim defendants in the amount of $**1,046,955.23** on or about March 6, 2006. Since that time, I have been zealously attempting

without success to obtain depositions in aid of execution against cross-claim defendants Gregg D. Caplitz and Rosalind Herman, who have consistently failed and refused to respond to the repeated deposition notices I have served for that purpose upon their attorney of record.

      3. On May 18, 2006 Magistrate Judge Alexander ordered cross-claim defendant Caplitz to appear for his deposition in the office of undersigned counsel, and to produce the documents that had been demanded by counsel.

      4. Since the date of Magistrate Alexander's *initial* order, I served Caplitz's counsel with three more identical deposition notices duces tecum dated June 19, 2006, October 20, 2006 and November 10, 2006.

      5. On June 22, 2006 I also served counsel with the first of several similar such notices of deposition duces tecum for the other cross-claim defendant, Rosalind Herman, and served repeated notices of Herman's deposition on June 26, 2006, July 5, 2006, October 20, 2006 and November 10, 2006. For each scheduled deposition of both Herman and Caplitz, they failed without excuse to appear, failed without excuse to produce any documents, and have paid nothing on my client's execution.

      6. Given that Caplitz and now Herman continued to disregard their obligations, on September 15, 2006 I moved for an order compelling Herman and Caplitz to provide certain financial documents by October 2, 2006 and appear for their depositions on October 9, 2006. Judge Young granted my motion on September 26, 2006, and electronically notified all counsel of same. Nevertheless, Caplitz and Herman failed to produce any documents whatsoever, nor did they appeared for deposition on October 9. At that point, they are now in contempt of not one but two orders of this Court.

      7. On October 5, 2006 I filed an amended motion for contempt, set down for hearing before Magistrate Judge Alexander.

8. On Friday, October 6, 2006 the parties and counsel traveled to the Concord, NH session of the First Circuit Court for oral argument of the crossclaim defendants' appeals. Herman and Caplitz were both present. Their attorney stated to me in the courtroom "I'll get you those documents by Tuesday", referring to the long overdue deposition schedule A documents that remain the subject of the contempt orders, and causing me to believe that Herman and Caplitz were both well aware of what they needed to produce, and that I would be getting the documents by October 10, 2006. Instead I received noting.

9. On October 20, 2006 I made one more attempt to obtain the cooperation of Caplitz and Herman by serving their counsel with another set of notices for their depositions (that were identical to all of the other deposition notices I had served) for depositions to take place on November 2, 2006. I personally affixed the appropriate postage to the 8.5 x 12 inch Tyvek envelope of deposition notices to Attorney Murphy and personally placed it in the United States mail box on North Washington Street in Boston..

10. On November 1, 2006 I arrived at my office at approximately 11:05 a.m. As I entered, I noticed that the same Tyvek envelope I had mailed to Attorney Murphy had been shoved under the door to my office suite, with an unofficial-looking yellow and brown label indicating "RTS" for insufficient postage. This seemed odd because I had placed on this package **extra** postage ($1.11 instead of the $.089 required for the package weight). The package appeared to have been shoved under the door to my suite in the morning of November 1. It was unaccompanied by any other mail for me or anyone of the other two businesses that share my suite. In the three years I had been practicing law

in that office suite, no U.S. mail had ever arrived in the morning. When mail is delivered, usually in the late afternoon, and there are always at least 20-30 pieces of mail per delivery, for me and the other tenants.

11. I went immediately to the local post office to inquire about this. I was informed by the customer representative on duty that no mail carrier had been dispatched to my office that morning yet, that the yellow and brown "RTS" label was not used by the United States Post Office, that even with insufficient postage (as opposed to if there had been no postage), the policy is to deliver the mail and demand the additional postage.

12. There is no doubt in my mind that my October 20 deposition notices were delivered to Attorney Murphy's office. I do not know how or by whose hand the package containing them was "redelivered" to my office, but I am certain it was not a postal employee.

13. I made telephone contact with Attorney Murphy on November 1. He stated that his clients were not aware that they were to sit for their depositions on November 2. On November 2, I went ahead with the depositions, and made a record as to the forgoing and the failure to appear of Caplitz and Herman.

14. On that day, I made further telephone contact with Attorney Murphy. He advised that he would make both of his clients available for deposition in my office on November 15, 2006, and provide the financial documents *prior* to that time. No documents were provided. On November 9, 2006, attorney Murphy informed me that because I did not send him re-notice of his clients' depositions, they would no longer be appearing in my office for depositions on November 15, 2006. I responded by delivering such notice (identical copies of the previous multiple notices) to him in hand on

November 10, 2006. Caplitz and Herman did not appear for their depositions on November 15, and still had produced no documents whatsoever.

15. On November 20, 2006, Herman and Caplitz personally appeared with counsel before Magistrate Judge Alexander on the contempt motion filed by Meiselman. They undoubtedly heard Magistrate Judge Alexander's firm unambiguous admonition which included the requirement that documents be produced by November 27, 2006. By that date Herman had produced no financial records, despite many notices, a promise by her lawyer made in her presence, and the order of this Court.

16. On December 15, 2006, I sent a letter to counsel for Herman and Caplitz, a true and accurate copy of which is attached hereto as Exhibit A, outlining Herman's defaults, and discussing the recent shocking disclosure that Herman and Caplitz have been conducting a scheme to hide Caplitz' enormous insurance commission earnings in Herman's shell companies. This letter put Herman on additional notice that the ambit of the document demand she had been ignoring for months included her shell companies.

17. Herman's failure to attend her deposition (per MJ Alexander's order) on December 20 (purportedly for medical reasons, set forth in her Memorandum) is less of a problem than her continued failure to produce documents by that date.

18. On December 21, 2006, Judge Young had received a copy of my aforementioned Decemeber 15, 2006 letter to counsel for Herman, and he scheduled a hearing for December 21, 2006. At that hearing, Attorney Cohan appeared for the first time in this action.

19. Judge Young expressed outrage that Herman remained in contempt, and issued his order that Herman would have to comply by January 5. This was an extension

of his originally pronounced date of January 2, which extension I orally requested given Attorney Cohan's recent appearance and the intervention of the holidays. Judge Young referred to my request as gracious.

20. Nevertheless, I received no documents at all from Herman until December 27, 2006. Attorney Cohan had been trying to schedule Herman's deposition with me, but I told him that I had to stand on the five-day interim between production and testimony embodied in my document request and Magistrate Judge Alexander's order (Doc. 80). I also informed him that I had depositions and an important mediation scheduled for the first week of the new year, and that January 2, 2007 being the fifth day after production, the earliest I could conduct his client's deposition would be January 5. It is only at that point that Attorney Cohan informed me he could not make himself available on that date.

21. The documents produced by Herman were in a stack more than one foot high, and required substantial time to review.

22. The excerpt of Herman's deposition that is attached to her Memorandum at Exhibit H, page 5, beginning on line 9, truthfully sets forth my position as to Herman's non-compliance, about which I have never been less than clear. I acknowledge that Herman provided many of the requested documents, and that I used the phrase "substantial compliance" to describe her production. I never stated and do not now state that Herman fully complied with the orders of this Court.

Dated: January 29, 2007                    /s/ Charles P. Kazarian

                                           Charles P. Kazarian