# United States Court of Appeals
## For the First Circuit

No. 07-1797

INDIANAPOLIS LIFE INSURANCE COMPANY,

Plaintiff,

v.

ROSALIND HERMAN, TRUSTEE, FINANCIAL RESOURCES NETWORK, INC.
PROFIT SHARING PLAN AND TRUST; FINANCIAL RESOURCES NETWORK, INC.
PROFIT SHARING PLAN AND TRUST,

Defendants, Cross-Claim Defendants, Appellants,

RUDY K. MEISELMAN, M.D.,

Defendant, Cross-Claim Plaintiff, Appellee,

GREGG D. CAPLITZ; HOPE E. MEISELMAN,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Boudin, Chief Judge,
Campbell and Stahl, Senior Circuit Judges.

Robert D. Cohan with whom Cohan Rasnick Myerson LLP was on brief for appellants.
Charles P. Kazarian, P.C. for appellee.

February 13, 2008

**BOUDIN, Chief Judge.** In the district court, the plaintiff (now appellee) Rudy Meiselman obtained a default judgment against defendant (now appellant) Rosalind Herman--trustee of the Financial Resources Network Profit Sharing Plan and Trust ("FRN plan"). The dispute on this appeal is whether Herman, named in some court papers as trustee and in others not, is liable only in her trustee capacity or whether she is personally liable to Meiselman.

Financial Resources Network, Inc. ("FRNI") is apparently a Massachusetts corporation engaged in business as a registered investment advisor. During the pertinent period, Herman served as president, treasurer, secretary and a director of the company; Meiselman has alleged that she is the sole shareholder but that Gregg Caplitz is an undisclosed principal who controls the company. FRNI administers a profit sharing plan for its employees governed by the Employee Retirement Income Security Act (ERISA), 26 U.S.C § 401(k) (2000); 29 U.S.C. § 1001 (2000) et seq., and Herman acted as plan administrator and sole trustee.

Meiselman, now living in Florida, is a retired doctor who in 2002 became a technical analyst for FRNI. In joining the company, he elected to participate in the pension plan, directed that much of his salary be contributed to the plan and executed a tax-free rollover of his pre-existing retirement funds--over $11 million--into the plan. At the end of June 2004, Meiselman

directed Herman to transfer all the assets in his plan account to a new IRA account that he had established elsewhere.

In November 2004, Indianapolis Life Insurance Company ("Indianapolis Life") brought a law suit in the Massachusetts federal district court against "Rosalyn Herman, Trustee," FRN Trust (but not FRNI), Caplitz and Meiselman and his wife. The complaint sought to rescind life insurance policies on the lives of Meiselman and his wife (designating the FRN plan as beneficiary) and to recover a large agent's commission paid to Caplitz. The complaint alleged that Herman had proceeded with the applications despite Meiselman's objection and without disclosing his failing health.

Meiselman answered the complaint (endorsing rescission), and "cross-claimed" against FRNI (although it was not a party), Herman and Caplitz. The cross-complaint sought substantial damages growing out of alleged derelictions by the cross-claim defendants in misappropriating Meiselman's funds and failing to execute his earlier directive to transfer his plan assets. The claims were based on various theories including breach of Meiselman's employment contract and pension plan rights, breach of fiduciary duty under ERISA and conversion of property.

The cross-claim defendants never answered Meiselman's complaint, a default was entered on June 28, 2005, and on August 18, the district court granted Meiselman's motion for default judgment. On January 6, 2006, Meiselman sought entry of a separate

final judgment in the amount of $938,640.14, Fed. R. Civ. P. 54(b), while on January 10, Herman and her co-defendants sought relief from the default judgment, Fed. R. Civ. P. 60(b), on account of their then-counsel's allegedly excusable neglect in failing to answer. The district court held a hearing on January 25, 2006, refused to undo the default, and the following day granted Indianapolis Life's motion for summary judgment. On January 27, the court entered a final judgment on all the claims in the case, including Meiselman's cross-claim. On the cross-claim, the judgment was for $938,640.14 plus costs and interest "[f]or Crossclaim Plaintiff Rudy Meiselman against Crossclaim defendant[] Rosalind Herman, Trustee, Financial Resources Network, Inc., Profit Sharing Plan and Trust."

Herman, the company, the plan and Caplitz sought review of the final judgment in this court, challenging the grant of summary judgment to Indianapolis Life and the denial of their request to undo the default. In a per curiam decision, this court upheld both of the district court's actions. Indianapolis Life Ins. Co. v. Herman, 204 Fed. Appx. 908, 910 (1st Cir. 2006) ("Meiselman I"). That final judgment is controlling in this case; the present appeal concerns its interpretation and Meiselman's efforts to enforce it.

On March 6, 2006, Meiselman obtained an execution from the clerk of the district court for $1,046,955.23 (plus costs and

post-judgment interest) against "Gregg D. Caplitz, Rosalind Herman, and Financial Resources Network, Inc.," jointly and severally. Meiselman noticed Herman's deposition and sought production of an assortment of her personal financial documents. When Herman failed to appear, a magistrate judge held a hearing on October 18, 2006, and found Herman in contempt. At a subsequent show cause hearing on November 20, Herman agreed to produce the requested documents and to appear for a deposition.

On December 15, 2006, Herman filed a motion to stay enforcement of and correct the execution, arguing that the execution made her personally liable whereas she was actually liable only in her capacity as trustee. Opposing the motion, Meiselman asked the district court to amend the judgment to remove the trustee designation following Herman's name. At a hearing on December 21, the district court denied Herman's motion without prejudice, instructed her to purge herself of the contempt order before filing further motions, and denied Meiselman's motion as moot.

On March 6, 2007--after Herman had been deposed and had produced certain documents--the contempt order was lifted. Herman then renewed her motion to stay enforcement of and correct the execution, and Meiselman renewed his motion to amend the judgment. On May 4, 2007, the district court issued an order without opinion denying Herman's motion, clearing the way--it appears--for

Meiselman to proceed against Herman's personal assets in satisfaction of the judgment.

Herman has now filed a timely appeal with this court arguing that the district court erred in not amending the execution to conform to the judgment; she asserts that the cross-complaint and resulting judgment made her liable only in her capacity as trustee of the FRN plan. Meiselman defends the district court's orders. We are now left to sort out this sorry tangle. The standard of review (Herman says de novo; Meiselman, abuse of discretion) depends on the particular issue. See Roger Edwards, LLC v. Fiddes & Sons Ltd., 427 F.3d 129, 132 (1st Cir. 2005).

The sole order under review, evidenced only by a docket entry, was entered on May 4, 2007, denying the "emergency motion" by Herman and the plan to set aside and correct the execution as not conforming to the judgment; the motion also sought to set aside an attachment secured against Herman's residence and an order against Meiselman preventing him from "proceeding against Herman's personal assets to collect the Original Judgment" entered January 27, 2006, and upheld in Meiselman I.

Herman's main and best argument is that she was never a party to the case in her personal capacity and that the judgment itself ran against her only in her capacity as trustee. If so, the execution procured by Meiselman, seemingly effective against Herman in her personal capacity, would be inconsistent with the judgment.

Ordinarily, a money judgment against an individual in his official capacity runs only against the entity's assets.[1]

The district court has inherent power to correct an execution at odds with the supporting judgment; this does not, as some of the briefing suggests, depend on state law. The judgment is that of the district court and while state procedures can be used for collection, Fed. R. Civ. P. 69(a), a discrepancy between two directives of the district court--judgment and execution--would be a matter subject to the court's inherent powers. See Patton v. Sec'y of Dep't of Health & Human Servs., 25 F.3d 1021, 1027 (Fed. Cir. 1994); Fed. R. Civ. P. 60(a).

Here, the district court gave no reason for its denial of Herman's motion, but, in opposing the motion, Meiselman had argued that the cross-complaint sought to impose liability on Herman in her personal capacity and that the judgment should be read conformably. The district judge, we can assume, accepted this view. No other basis for denying the motion was urged. And such an interpretation explains why the district judge found it

---

[1] See Kentucky v. Graham, 473 U.S. 159, 166 (1985) ("[A] plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself."); First Union Nat'l Bank ex rel. Se. Timber Leasing Statutory Trust v. Pictet Overseas Trust Corp., 351 F.3d 810, 813-14 & n.2 (8th Cir. 2003) (noting that if claim was stated against trustee in its representative capacity, recovery would only be had from the trust assets); Manginaro v. Welfare Fund of Local 771, I.A.T.S.E., 21 F. Supp. 2d 284, 301 (S.D.N.Y. 1998) ("Although a trustee can be sued in his official capacity, such suits are treated as suits against the plan.").

unnecessary to rule on Meiselman's back-up motion to amend the judgment itself.

At first blush, such a reading of the cross-complaint and judgment might seem surprising: the case caption in the district court throughout the case described the first defendant as "Rosalind Herman, Trustee," and the pertinent final paragraph of the judgment awarded the money judgment to Meiselman "against . . . Rosalind Herman, Trustee" (along with the other two cross-claim defendants). Nor was she re-served in her individual capacity.[2] But the case caption is not conclusive and the judgment is subject to more than one reading.

The caption started with the original complaint by Indianapolis Life and, so far as Herman was a defendant in that aspect of the case, she was certainly sued by Indianapolis Life in her capacity as trustee. The main relief sought against her was to rescind policies of which the plan was beneficiary; monetary relief

---

[2] Herman also argues that judgment could not have entered against her personally because she was only made a party to the action, and accordingly was only served, in her capacity as trustee. This is, in substance, a claim of insufficient service of process, or relatedly, lack of personal jurisdiction over her in her personal capacity. See generally United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1085-86 (1st Cir. 1992). In fact, the return of service merely lists Herman as the recipient without referring to her capacity. In any event, Herman waived any such defense by failing to raise it even in her Rule 60(b) motion following entry of default judgment. In Re Worldwide Web Sys., Inc., 328 F.3d 1291, 1300-01 (11th Cir. 2003); Swaim v. Moltan Co., 73 F.3d 711, 718 (7th Cir.), cert. denied sub nom. Gurley v. Swaim, 517 U.S. 1244 (1996).

was sought only against Caplitz for the large agent's commission he had received. So the principal question is how the <u>cross-claim</u> and <u>the judgment entered upon it</u> should be read.

Although the cross-claim caption also referred to Herman as "trustee," as does the later judgment, in federal cases the court examines the substance of the complaint and the parties' litigation conduct to determine the capacity in which a defendant was sued.[3] This approach eschews mechanical reliance on the form of the caption or individual designation and is consistent with the practical approach to construction of pleadings and orders taken by the Federal Rules. See Duckworth v. Franzen, 780 F.2d 645, 649-50 (7th Cir. 1985), cert. denied, 479 U.S. 816 (1986); Fed. R. Civ. P. 15(b).

Meiselman stresses that in identifying parties to the cross-claim, the cross-complaint at the outset described Herman as "a natural person," adding thereafter her business affiliations; but this also proves little: she would be a natural person even if she were sued solely in her capacity as trustee. What matters most, in our view, is the substance of the cross-complaint so far

---

[3] See Powell v. Alexander, 391 F.3d 1, 22 (1st Cir. 2004); see also Shockley v. Jones, 823 F.2d 1068, 1071 (7th Cir. 1987) (determining whether defendant in section 1983 action was sued in personal or official capacity by reviewing pleadings and litigation conduct); Rice v. Hamilton Air Force Base Commissary, 720 F.2d 1082, 1085 (9th Cir. 1983) (determining whether defendant in employment discrimination action was properly a party to the case by reviewing allegations in complaint).

as it sought to impose liability on Herman, and the course of proceedings so far as it casts any light upon the matter.

The factual recitations of the complaint, preceding the claims themselves, make clear that it sought to recover damages as to Herman because she had refused his instructions to transfer his plan assets to an independent IRA, had caused almost $50,000 to be diverted from his account to pay counsel to defend her and the company against Meiselman in litigation, had withheld salary due to him, had improperly liquidated his investments and had charged him an improper management fee.

Apart from a count seeking declaratory relief, the counts --all naming Herman along with differing other defendants--were for breach of employment contract, breach of fiduciary duty under ERISA, breach of the plan agreement and conversion of Meiselman's account funds. Both breach of contract claims probably could run only against the company or the plan; but breach of fiduciary duty and conversion claims were certainly potentially available against Herman in her personal capacity. See First Union Nat'l Bank ex rel. Se. Timber Leasing Statutory Trust v. Pictet Overseas Trust Corp., 351 F.3d 810, 814-15 (8th Cir. 2003).

Under ERISA, a plan trustee can be held personally liable under certain circumstances for breach of fiduciary duty, 29 U.S.C. § 1109(a); Mertens v. Hewitt Assocs., 508 U.S. 248, 252 (1993), and a conversion of property claim would lie against the converter

-10-

personally, even if the action was purportedly taken in a corporate or official capacity. See, e.g., Tubos de Acero de Mexico, S.A. v. Am. Int'l Inv. Corp., 292 F.3d 471, 479 (5th Cir. 2002). Much of Herman's brief is devoted to arguing on the merits that liability under ERISA could not be imposed on Herman personally and that state law claims against her would be preempted by ERISA; but such objections were forfeited when Herman defaulted. See Saks v. Franklin Covey Co., 316 F.3d 337, 349 (2d Cir. 2003).[4]

    A reasonable litigant, advised by competent counsel, would have had good reason to fear that personal liability might be imposed under some of the theories in the complaint. Further, the complaint made clear that Herman was being charged in some measure with personal dishonesty (for example, that Herman had charged the account for non-existent services (¶ 19), and that she and Caplitz were "helping themselves to Meiselman's money to defend a legal

---

[4] Generally, an ERISA fiduciary can only be liable to the plan and not an individual beneficiary for a breach of her duty. See Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 144 (1985) (trustee's liability is to the plan rather than the individual beneficiary). But see Ream v. Frey, 107 F.3d 147, 152-53 (3d Cir. 1997) (allowing individual ERISA beneficiary to seek relief from plan fiduciary under 29 U.S.C. § 1132(a)(3) where plan was no longer functioning). The Supreme Court recently heard arguments in a case concerning the scope of relief available under 29 U.S.C. §§ 1109, 1132. LaRue v. DeWolff, Boberg & Assocs., Inc., No. 06-856 (argued Nov. 26, 2007). Regardless of the precise scope of section 1109, any substantive defense to Meiselman's ERISA claim has been forfeited.

action they instigated by their refusal to carry out their fiduciary obligations" (¶ 29)).[5]

Thus, when Herman failed to answer the complaint or to timely oppose the order of default or the entry of default judgment, she was taking a substantial risk as to personal liability. Nor, it appears, did she oppose the showing of Meiselman's damages by calculations made in his affidavit. So it is of little use to complain now that the damages somehow swelled from the $70,000 or so identified in the cross-complaint--professedly an incomplete estimate--to the much larger figure contained in the affidavits.

This brings us to the final judgment. It did refer to Herman as "trustee"--curiously the earlier notice of default did not--but it rested upon a complaint that seemingly sought in some measure to hold her personally liable. In March 2006, the execution was secured by Meiselman, making no mention of Herman's status and the attempt began to pursue Herman personally. Yet remarkably she took no action to clarify her status under the judgment until December 2006; and, because she placed herself in contempt, her present motion could not be filed until <u>a year</u> after the original execution had issued.

---

[5]Ultimately, Meiselman's damages affidavit attributed $824,467.58 of his $938,640.14 in damages (accruing interest later raised this figure) to lost capital appreciation owing to Herman's mishandling of his funds, allegedly in breach of her fiduciary duty to him.

-12-

It would perhaps have made matters clearer if the district judge had stated that he read the cross-complaint as threatening Herman with personal liability at least as to some of the claims; but this is a determination of law and we would so construe the complaint in any event. See U.S. Liab. Ins. Co. v. Bourbeau, 49 F.3d 786, 787 (1st Cir. 1995). It might also have been better to amend the judgment accordingly; but treating the "trustee" reference as surplusage is not without precedent. Gardiner v. Rogers, 166 N.E. 763, 764 (Mass. 1929).

One could ague that the judgment, read in light of the complaint, could include amounts for which Herman is liable personally and other amounts for which she is liable only in her corporate capacity, i.e., money that should come from the company or the plan--assuming it has any other assets. Perhaps a way could be found, through a remand and further proceedings, to effect an allocation which would appear in a judgment accurately reflecting the substance of the claims on which Herman had defaulted.

But Herman has not sought such a solution either in the district court or here, even as an alternative disposition.[6] Further, any allocation would be complicated, if not made

---

[6] Nor is it clear, based on the affidavit specifying the damages, that an allocation would greatly assist Herman. The only set of damages identified in the affidavit that might readily be allocated only to a different entity are those based on Meiselman's $23,000 claim for breach of his employment contract and, for reasons unnecessary to develop, even this allocation might not be clear cut.

impossible, by Herman's own failure to answer the complaint and to engage in the litigation that would have sorted out her liabilities and clarified which were personal and which were not. This default, and the delays in raising the present issue, make Herman or her counsel largely the author of her misfortune.

Justice be done though the heavens fall ("*Fiat justitia, ruat coelum*") is an admirable maxim, but in practice it is hedged by requirements that litigants make reasonable efforts to answer complaints, read documents served on them, obey court orders and seek corrections in a timely manner. If what happened here is due not to Herman but her former counsel, that is a matter to be settled between them.

*Affirmed*.